Exhibit 8

St. Amour, Leo 08/31/2026
For Educational Use Only



2008 WL 687196
Only the Westlaw citation is currently available.
United States District Court,
M.D. Louisiana.

VERNON MONROE, et al
v.
COOPER/T. SMITH STEVEDORING COMPANY, INC.

Civil Action No. 06-933-B-M2.
|
March 10, 2008.

**Attorneys and Law Firms**

James Parkerson Roy, Brian Christopher Colomb, Domengeaux, Wright, Roy and Edwards, Lafayette, LA, Jon Kenton Parsons, Roedel, Parsons, Koch, Blache, Balhoff & McCollister, Baton Rouge, LA, for Vernon Monroe, et al.

Jason P. Waguespack, Frederick W. Swaim, III, Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, LA, for Cooper/T. Smith Stevedoring Company, Inc.

***RULING & ORDER***

CHRISTINE NOLAND, United States Magistrate Judge.

***1** This matter is before the Court on the Motion to Compel Plaintiff to Submit to an Independent Medical Examination and Vocational Rehabilitation Exam (R. Doc. 18) filed by defendant, Cooper/T. Smith Stevedoring Company, Inc. ("Cooper"). Plaintiffs, Vernon Monroe ("Mr.Monroe") and Marion Monroe (collectively "plaintiffs"), have filed an opposition (R. Doc. 20) to this motion, to which Cooper has filed a reply memorandum (R. Doc. 21-2). Cooper has also filed a Motion and Incorporated Memorandum for Expedited Hearing. (R. Doc. 19).

***FACTS & PROCEDURAL BACKGROUND***

This case arises out of injuries Mr. Monroe allegedly sustained during two incidents that occurred while he was working for Cooper as a maintenance superintendent on a vessel named M/V America ("the America"). The first incident occurred on February 4, 2004, when Mr. Monroe allegedly fell down a set of damaged and dilapidated steps located on the America while attempting to board the vessel. He contends that, after that incident, he began experiencing pain in his back and lower extremities. The second incident occurred on August 24, 2004. During that incident, Mr. Monroe purportedly slipped and fell on the deck of the America while walking to retrieve a piece of pipe. The plaintiffs attribute that accident to various alleged defects and/or unreasonably dangerous conditions in the deck, including what has been described as "sludge" that had formed in depressions in the deck.

Following the first incident, Mr. Monroe initially sought treatment from Dr. Jeff Burnham, a family physician from whom he had received medical treatment over the past twenty-five years for a variety of ailments and who is also a former neighbor and friend of the plaintiffs.[1] When his symptoms continued, Mr. Monroe asked Cooper to approve additional medical treatment with Dr. Burnham. According to plaintiffs, rather than approve additional medical treatment with Dr. Burnham, Cooper "ordered" Mr. Monroe to see a family medicine physician by the name of Dr. Richard Caro ("Dr.Caro"). Plaintiffs contend that, because Cooper "ordered" Mr. Monroe to see Dr. Caro, Dr. Caro is therefore Cooper's "choice of physician." Cooper, on the other hand, asserts that, viewing Mr. Monroe as a potential worker's compensation claimant, it "recommended" that he see a particular physician (Dr. Caro) because Cooper might be legally obligated to satisfy Mr. Monroe's medical specials regardless of any alleged negligence. Dr. Caro indicated in his deposition that he was not a company doctor for Cooper relative to this case; however, Mr. Monroe was sent to him by Cooper as a "Workman's Comp" patient. *See,* Dr. Caro's deposition transcript, p. 10.

Mr. Monroe saw Dr. Caro on two occasions, concluding on October 13, 2004.[2] During his deposition in this matter, Dr. Caro testified that, while treating Mr. Monroe, he was never informed of the two incidents alleged in this lawsuit or of Mr. Monroe's prior fifteen years of lumbar treatment. Dr. Caro testified that he did not know about this lawsuit until he was

contacted in December 2007 regarding a request that he give a deposition in this matter. He further indicated that he never performed an independent medical examination ("IME") on Mr. Monroe for purposes of this litigation. *Id.,* p. 6-7, 13, 26. Following Mr. Monroe's second office visit with Dr. Caro, he was referred by Dr. Caro to a neurosurgeon, Dr. Fraser Landreneau ("Dr.Landreneau"), for further evaluation of a herniated disc that had been identified on an MRI. *Id.,* at p. 20-21. Mr. Monroe's first visit with Dr. Landreneau was on October 21, 2004, and he has continued to treat with Dr. Landreneau for his cervical and lumbar spine condition for the past three years, with such treatment including lumbar surgery and referral for physical therapy and treatment with other physicians. During Dr. Landreneau's treatment of Mr. Monroe, Dr. Caro, Dr. Burnham, and Cooper (and/or Cooper's worker's compensation adjuster) have been copied on all of Dr. Landreneau's medical reports and progress notes.

***2** In the present motion, Cooper seeks to have this Court compel Mr. Monroe to undergo two IMEs, the first by Dr. Christopher E. Cenac, Sr. ("Dr.Cenac"), an orthopedic surgeon who specializes in, among other things, spine surgery, and the second by Dr. Larry S. Stokes ("Dr.Stokes"), a vocational rehabilitation specialist. Plaintiffs oppose Cooper's motion on the grounds that Mr. Monroe should not be forced to undergo a second IME by a physician practicing in the same or a similar specialty as Dr. Landreneau and because Rule 35 only authorizes examinations by physicians, not vocational rehabilitation specialists.

***LAW & ANALYSIS***

Pursuant to Fed.R.Civ.P. 35, the court where an action is pending may order a party whose mental or physical condition is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. Fed.R.Civ.P. 35. Rule 35 requires "discriminating application" by the trial judge, who must decide whether the party requesting a mental or physical examination (or examinations) has adequately demonstrated the existence of the Rule's requirements of "in controversy" and "good cause," which requirements are "necessarily related."[3] *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). Those requirements mean that the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule. *Id.,* at 118-119.

Rule 35 does not limit the number of examinations a plaintiff may be compelled to undergo; however, a court should require a "stronger showing of necessity" before ordering repeated examinations. *Vopelak v. Williams,* 42 F.R.D. 387 (N.D.Ohio 1967).[4] The number of examinations ordered should be held to the minimum necessary considering a party's right to privacy and the need for the court to have accurate information. *Id.,* citing *Schlagenhauf.*[5] Each request for an independent medical examination must turn on its own facts, and the number of examinations to which a party may be subjected depends solely upon the circumstances underlying the request. *Shirsat v. Mutual Pharmaceutical Co., Inc.,* 169 F.R.D. 68 (E.D.Pa.1996).

In the present case, plaintiffs contend that Mr. Monroe should not be compelled to undergo an IME by Dr. Cenac, an orthopedic surgeon specializing in spine surgery, because Cooper already has at its disposal IMEs from Dr. Caro, a family medicine physician of Cooper's "own choosing,"[6] and from Dr. Landreneau, a neurosurgeon who, according to plaintiffs, is "presumed" to also be a physician of Cooper's "own choosing" because Mr. Monroe was referred to him by Dr. Caro and because both Dr. Caro and Cooper were copied on all progress reports of Dr. Landreneau. Plaintiffs argue that Mr. Monroe should not have to be examined by Cooper's "SECOND choice of spine surgeon." While it is true that courts sometimes decline to allow a second IME by a physician in the same or a similar specialty, where, to do so, would simply allow the defendant to search for a more favorable report and confuse the medical aspects of the case,[7] such additional examination is permitted, if the movant presents evidence that the requested examination is "reasonably expected to shed light on the medical issue in the case." *See, Greco v. Paternostro,* 305 So.2d 751 (La.App.1974)(Although plaintiff had voluntarily submitted to an examination by defendants' neurosurgeon, the interest of justice required the granting of defendants' request for an orthopedic examination, where additional medical information was shown reasonably necessary for defendants to prepare to defend the case or to participate in informed compromise negotiations, and the request did not appear to

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

be in any way oppressive to plaintiff, who had never been examined by an orthopedic surgeon).

***3** In the present case, even if the Court assumes that Dr. Caro and Dr. Landreneau are physicians of Cooper's own choosing and that Cooper therefore already has the benefit of IMEs performed by both a family medicine physician and a neurosurgeon,[8] Mr. Monroe has not yet undergone an IME by an orthopedic surgeon. Furthermore, even if that orthopedic surgeon specializes in spine surgery and is therefore arguably of the same or a similar specialty as Dr. Landreneau, Cooper is nevertheless entitled to such medical examination if it can demonstrate "good cause" for that examination. In other words, if Cooper is able to come forward with evidence demonstrating that an examination by Dr. Cenac is "reasonably expected to shed light on the medical issues in this case," beyond the information already provided by the examinations of Dr. Caro, Dr. Landreneau, and other health care providers who have treated Mr. Monroe, the Court will grant Cooper's request. *See, Woods v. Grain Dealers Mut. Ins. Co.,* 159 So.2d 410 (La.App.1964)(An additional physical examination should be ordered where it is demonstrated that the additional expert testimony will be "materially helpful" to the Court in understanding the plaintiff's injuries).[9] At this time, Cooper has not yet presented any such evidence and has merely asserted that it is entitled to the medical examination by Dr. Cenac because the examinations by Dr. Caro and Dr. Landreneau do not constitute IMEs requested by it. Regardless of whether that argument has merit, Cooper must nevertheless demonstrate good cause for the requested examination by Dr. Cenac. Accordingly, the Court will allow Cooper fifteen (15) days within which to submit that evidence.[10]

As to Cooper's request for a vocational rehabilitation examination of Mr. Monroe, plaintiffs contend that Cooper is not entitled to same based upon the Fifth Circuit's decision in *Acosta v. Tenneco Oil Co.,* 913 F.2d 205 (5th Cir.1990), which precluded examiners, other than physicians and psychologists, from conducting Rule 35 examinations. An amendment to Rule 35(a) subsequent to *Acosta,* in 1991, extended that rule to include examinations by "other certified or licensed professionals, such as dentists or occupational therapists, who are not physicians or clinical psychologists, but who may be well-qualified to give valuable testimony about the physical or mental condition that is the subject of the dispute." Rule 35(a), Advisory Committee's Note, 1991 amendment; *Fischer v. Coastal Towing Inc.,* 168 F.R.D. 199 (E.D.Tex.1996)(A "suitably licensed or certified examiner" under Rule 35 includes a vocational-rehabilitation expert). Based upon Dr. Stokes' curriculum vitae which Cooper has submitted for the Court's review, it appears that Dr. Stokes is a certified or licensed professional qualified to conduct a vocational rehabilitation examination under Rule 35. Thus, plaintiffs' argument in that regard lacks merit.

Furthermore, Cooper has demonstrated "good cause" for an order requiring Mr. Monroe to submit to an examination by its own vocational rehabilitation expert. The plaintiffs have placed Mr. Monroe's physical/mental condition and residual employability in controversy (1) by alleging damages for loss of earnings and/or earning capacity and disability; and (2) by submitting Mr. Monroe to their own vocational-rehabilitation expert for evaluation. *Id.,* at 201. To avoid prejudice, Cooper must have its expert conduct an examination of Mr. Monroe to rebut the report of plaintiffs' expert. *Id.* Considering that Cooper has not been provided with all of the plaintiffs' expert's testing data, that plaintiffs have not responded to written discovery concerning that issue, and that the conclusions of plaintiffs' vocational expert are based upon an "in-depth clinical interview" and vocational aptitude, achievement, and interest testing of Mr. Monroe for which the defense expert was not present, there is no way for Cooper's expert to adequately scrutinize the conclusions of plaintiffs' expert without conducting an independent vocational examination of his own. *Id.,* at 201.[11] Thus, Cooper's motion to compel a vocational rehabilitation evaluation of Mr. Monroe by Dr. Stokes will be granted.

***4** Accordingly;

**IT IS ORDERED** that the Motion to Compel Plaintiff to Submit to an Independent Medical Examination and Vocational Rehabilitation Exam (R. Doc. 18) filed by defendant, Cooper/T. Smith Stevedoring Company, Inc., is hereby **GRANTED IN PART,** in that plaintiff, Vernon Monroe, shall submit to a vocational rehabilitation examination by defense expert, Dr. Larry S. Stokes.

**IT IS FURTHER ORDERED** that a final ruling on the remaining portion of Cooper's motion to compel, relative

to the requested independent medical examination by Dr. Christopher E. Cenac, Sr., shall be **DEFERRED** for fifteen (15) days to allow Cooper the opportunity to present evidence demonstrating "good cause" for such examination.

**IT IS FURTHER ORDERED** that Cooper's Motion and Incorporated Memorandum for Expedited Hearing (R. Doc. 19) is hereby **DENIED AS MOOT.**

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 687196

Footnotes

1 *See,* Mr. Monroe's deposition transcript, attached to Cooper's reply as Exhibit 1, p. 65.

2 *See,* Dr. Caro's deposition transcript, attached to Cooper's reply as Exhibit 2, p. 23.

3 In the present matter, it is undisputed that Mr. Monroe's physical condition is "in controversy" by virtue of his having filed a personal injury suit. Thus, the only issue before the Court is whether Cooper has demonstrated "good cause" for the requested examinations.

4 *See also, Case v. Offshore, Inc.,* 1996 WL 210720 (E.D.La.1996), citing 8A C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure* § 2234 at 475 (While it is true that Fed.R.Civ.P. 35(a) by its terms permits more than one independent medical examination of a party, the party seeking the examination always bears the burden of showing good cause to support an order requiring a particularly requested examination. Where the "moving party has already made an examination in the past, ... the court will require a stronger showing of necessity before it will order repeated examinations").

5 *See also, Moore v. Calavar Corp.,* 142 F.R.D. 134, 135 (W.D.La.1992).

6 Although Dr. Caro testified in his deposition that he did not perform an IME on Mr. Monroe for purposes of this litigation, plaintiffs nevertheless contend that Dr. Caro's treatment of Mr. Monroe constitutes an IME by a physician of Cooper's choosing.

7 *See, Monroe v. Northwestern Mutual Ins. Co.,* 210 So.2d 365 (La.App. 3 Cir.1968), *writ denied* (La.1968).

8 Plaintiffs have provided some jurisprudential support for the assertion that Dr. Caro and Dr. Landreneau can be considered physicians of Cooper's choice. *See, Monroe,* at 368 (holding that, when a defendant's claims manager directs a plaintiff to a particular doctor who examines him and submits a medical report and bills to the defendant, such doctor is considered a physician of the defendant's choice. The court also found that a neurosurgeon to whom that doctor referred the plaintiff, and who also submitted reports to the defendant, would "have to be placed on the side of the defendant").

9 The purpose of allowing pretrial medical examinations is to enable the defendant to prepare his defense and to ascertain the nature, extent, or permanency of the plaintiff's alleged injuries. *See, Korolyk v. Blagman,* 452 N.Y.S.2d 445 (N.Y.A.D.1982)(A successive examination will be allowed only where there is shown to be a need for more thorough disclosure of the plaintiff's physical condition); *Ishler v. Cook,* 299 F.2d 507 (7th Cir.1962)(A court may order more than one physical examination of a plaintiff in an action based upon personal injury to obtain the full truth concerning the matter in controversy); *Roskovics v. Ashtabula Waterworks Co.,* 174 N.E.2d 295 (Ohio Com.Pl.1961)(Medical examination of a plaintiff in a negligence case should not be had merely to obtain cumulative evidence, and when sufficient evidence of the nature, character, extent and permanency of the alleged injuries has been made available to the defendant, a request for additional examinations should be declined); *Woods,* quoting AmJur 89, Verbo Discovery and Inspection, p. 91 ("A defendant may be entitled to have the plaintiff examined more than once to determine the extent of his injuries,

depending upon the circumstances of the case. If the necessary information was obtainable upon the first examination, or another examination will unnecessarily delay the trial, it is uniformly held that the defendant cannot require the plaintiff to submit to another examination. A court cannot be compelled to subject the plaintiff to limitless examinations in order that some medical expert may be procured who might agree with a theory, character of disease, or injury contended for by the defendant. But when the plaintiff's alleged injuries are numerous, severe, and permanent, and an examination was made at the defendant's instance before the action was brought, or a claim for damages was made, so that it was not then known what injuries he would claim to have received, the court should grant defendant's motion for another examination made six months later and after an action is brought, if the developments during that period appear to be essential to ascertain the severity and permanency of the injuries").

10 According to plaintiffs' representations in their opposition, Mr. Monroe has been examined by seventeen different health care providers in connection with the injuries alleged in this suit, fifteen of which were purportedly selected by Cooper (or by physicians chosen by Cooper). In order to demonstrate good cause for another examination by an orthopedic surgeon, Cooper must demonstrate that Mr. Monroe's physical condition which is at issue has not been sufficiently established through the prior examinations and documentary evidence produced by the above-referenced health care providers (and/or that there has been a change in his condition warranting an additional medical examination), a burden that will likely be difficult to meet, but the Court will nevertheless allow Cooper the opportunity to produce such evidence, if any, prior to making a decision regarding the requested examination. *See,* *Hoyt v.. Gray Ins. Co.,* 2000-2517 (La.App. 4 Cir.2002), 809 So.2d 1076 (Trial court did not abuse its discretion in failing to order motorist in personal injury action to undergo a third electromyography (EMG) test, where test was invasive and painful, and the second EMG showed the "same damage and diagnosis" as did the first one); *LeFave v. Bordonaro,* 2007 WL 1484999 (Fla.App. 2 Dist.2007)(Following grant of plaintiff's motion for new trial, trial court in personal injury action acted within its discretion in denying defendant's motion for a second IME by a neurosurgeon, where the defendant had obtained an IME from an orthopedic physician before the first trial, and there had been no "change in circumstances" between the first trial and the upcoming second trial that would warrant a second IME); *Cramer v. Winnick,* 619 N .Y.S.2d 233 (N.Y.Sup.1994)(While under certain circumstances it may be proper to require a plaintiff to submit to more than one physical examination, further examination will only be permitted where "special, unusual or extraordinary circumstances" are spelled out factually by the defendant; the defendant must show a need for "more thorough disclosure" of the plaintiff's physical condition).

11 *See also,* *Wilks v. Epic Marine, LLC,* 2003 WL 22272191 (E.D . La.2003)(where the Eastern District of Louisiana distinguished the Fifth Circuit's decision in *Acosta* and its previous decision in *In re Falcon Workover Co., Inc.,* 186 F.R.D. 352, 353 (E.D.La.1999)(which held that good cause does not exist for a defense vocational exam where the defendant has access to all of the claimant's medical and testing records and has had the opportunity to depose the claimant and/or his expert) because, in those cases, the courts did not address whether "good cause" exists for a vocational examination when the plaintiff's expert conducted personal interviews with the plaintiff for which the defense expert was not present. The Eastern District held that "good cause" for a vocational evaluation by a defense expert is shown where the plaintiff's vocational expert has included in his/her report observations made by him/her during interviews and testing. The court assumed that such personal observations were factors in the plaintiff's expert's analysis and a basis for his/her conclusions. The court noted that, while the results of the testing were available to the defendant's expert, the defendant's expert did not see the plaintiff take the test, and there are circumstances where the observations of the person taking the test are pertinent to the reliability of the test results. Finally, the jury might discount the report of the defense expert because he was not present for the examination); *Jackson v. Entergy Operations, Inc.,* 1998 WL 28272 (E.D.La.1998)(When a plaintiff has retained her own experts and intends to prove her claim at trial through their testimony, and when her mental injuries will be an important component of her damages, good cause exists to permit the defendant to select its own expert to examine her. A plaintiff may not avoid such an examination simply on grounds that other sources of information, including medical reports and depositions of plaintiff's treating physicians and experts, are available).

St. Amour, Leo 08/31/2026
For Educational Use Only



End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.