Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| James McDonald,<br><br>Plaintiff,<br><br>vs.<br><br>FJ Carrier Logistics LLC, *et al.*,<br><br>Defendants. | Case No. 2:24-cv-10049-BRM-CI<br>Hon. Brandy R. McMillion<br>Mag. Curtis Ivy, Jr.<br><br>*** **Oral Argument Requested** *** |

## PLAINTIFF'S MOTION TO COMPEL

NOW COMES Plaintiff, James McDonald, by and through his attorneys, Michigan Auto Law, P.C., and for his Motion to Compel, states as follows:

Plaintiff respectfully moves the Court to enter an order (1) compelling Defendant Diesel Global Logistics, Inc. to fully answer Plaintiff's Second Set of Interrogatories; (2) compelling DGL to supplement its answers to Plaintiff's First Set of Interrogatories; (3) compelling DGL to supplement its responses to Plaintiff's First Request for Production of Documents; (4) compelling depositions of DGL's corporate representative and dispatcher; and (5) awarding Plaintiff the reasonable costs and expenses, including attorney fees, incurred in bringing this Motion, for the reasons set forth in the accompanying brief in support.

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

Plaintiff certifies that as the moving party, he has in good faith conferred with the party failing to make disclosure or discovery in an effort to obtain it without court action. *See* Fed. R. Civ. P. 37(a)(1).

Counsel for Plaintiff also certifies that counsel conferred with the parties entitled to be heard on the motion in good faith in a manner that reasonably explained the nature of the motion and its legal basis. *See* E.D. Mich. LR 7.1(a)(1). Counsel for Plaintiff spoke with Counsel for Defendant for FJ Carrier via telephone on May 28, 2026. Counsel for FJ Carrier indicated they were not taking a position regarding Plaintiff's motion. *See* E.D. Mich. LR 7.1(a)(2). Furthermore, at the last status conference held attended by the parties, the issues raised in this motion were discussed, and Counsel for DGL stated that it would produce the documents sought by Plaintiff, serve updated answers to interrogatories, and provide deposition dates, even stating that he would be willing to sign a stipulated order to that effect. However, when Plaintiff sent a stipulated order, Plaintiff received no response. *See* Exhibit 11: Email and Proposed Stipulated Order.

Respectfully submitted,

MICHIGAN AUTO LAW, P.C.

BY: /s/ Leo J. St. Amour
LEO J. ST. AMOUR (P88642)
Attorney for Plaintiff

KEVIN H. SEIFERHELD (P58016)
ALEXANDER P. KEMP (P80963)
Attorneys for Plaintiff
kseiferheld@michiganautolaw.com
akemp@michiganautolaw.com
lstamour@michiganautolaw.com
esimon@michiganautolaw.com
30101 Northwestern Hwy.
Farmington Hills, MI 48334
248-353-7575
248-254-8081 (fax)

Dated: September 17, 2026

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| James McDonald,<br><br>Plaintiff,<br><br>vs.<br><br>FJ Carrier Logistics LLC, *et al.*,<br><br>Defendants. | Case No. 2:24-cv-10049-BRM-CI<br>Hon. Brandy R. McMillion<br>Mag. Curtis Ivy, Jr. |

**<u>BRIEF IN SUPPORT</u>**

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

# TABLE OF CONTENTS

Concise Statement of Issue Presented ........................................................vi
Controlling or Most Appropriate Authority ......................................................... vii
Table of Authorities ......................................................................................... viii
Introduction ..........................................................................................................1
Statement of Facts .................................................................................................1
Argument ...............................................................................................................9
I. DGL should be required to produce supplemental answers to Plaintiff's First Set of Interrogatories because the answers are incomplete and evasive .............11
II. DGL should likewise be compelled to provide supplemental answers to Plaintiff's Second Set of Interrogatories as its answers do not respond to the questions asked ...........................................................................................15
III. DGL should be compelled to produce documents responsive to Plaintiff's requests because its objections are boilerplate and DGL has had ample time to compile responsive documents ...........................................................17
IV. DGL and the dispatcher who assigned the load at issue in this case should be compelled to appear for depositions ....................................................20
V. Plaintiff should be awarded the costs incurred in having to bring this motion because DGL's conduct was not substantially justified and no circumstances make an award of expenses unjust ..................................................................21
Conclusion ..........................................................................................................23

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

## CONCISE STATEMENT OF ISSUE PRESENTED

**I.** Under Federal Rule of Civil Procedure 37, should Defendant Diesel Global Logistics, Inc. be compelled to fully and completely answer Plaintiff's Second Set of Interrogatories when Defendant failed to answer the questions posed to it and repeated the same answer to different questions?

Plaintiff answers: "Yes."

**II.** Should Defendant be compelled to produce supplemental answers to Plaintiff's First Set of Interrogatories when Defendant has failed to answer several questions that are within the scope of discovery under Federal Rule of Civil Procedure 26?

Plaintiff answers: "Yes."

**III.** Should Defendant be compelled to produce documents responsive to Plaintiff's First Request for Production of Documents when the documents sought are within the scope of discovery and are relevant to Plaintiff's claims in this case?

Plaintiff answers: "Yes."

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

The controlling or most appropriate authority is Federal Rules of Civil Procedure 26, 30, 33, 34, and 37.

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Korkis*,
No. 2:19-cv-13565, 2023 WL 11951037 (E.D. Mich. Oct. 12, 2023) .............10, 19

*Curtis v. Deutsche Bank*,
829 F. Supp. 3d 303 (E.D. Mich. 2025) ....................................................21

*Design Basics v. DJW & Assocs. of Mich.*,
17-12272, 2019 WL 7584399 (E.D. Mich. Aug. 6, 2019) ...............................14

*Firestone Fin. Corp. v. AB Marketing LLC*,
No. 1:12-CV-446, 2013 WL 3813516 (S.D. Ohio July 22, 2013) .........................20

*Gonzales v. Ohio Cas. Ins. Co.*,
No. 07-CV-13921, 2008 WL 795757 (E.D. Mich. 2008) ...............................10, 19

*Harding v. Steak N Shake, Inc.*,
No. 1:21-cv-01212, 2022 WL 152498 (N.D. Ohio Jan. 18, 2022).........................20

*In re Heparin Prods. Liab. Litig.*,
273 F.R.D. 399 (N.D. Ohio 2011) ..........................................................14

*Jones-McNamara v. Holzer Health Sys.*,
No. 2:13-cv-616, 2014 WL 3563406 (S.D. Ohio July 18, 2014) ..........................11

*Miller v. Joaquin*,
431 F. Supp. 3d 906 (E.D. Mich. 2019) ................................. 11, 12, 13, 15, 17, 20

*Montgomery v. Caribe Transp. II, LLC*,
608 U.S. 219 (2026)...........................................................................2

*State Farm Mut. Auto. Ins. Co. v. Hawkins*,
No. 08-CV-10367-DT, 2008 WL 5383855 (E.D. Mich. Dec. 23, 2008) ...............22

*Trabon Eng'g Corp. v. Eaton Mfg. Co.*,
37 F.R.D. 51 (N.D. Ohio 1964) ..............................................................14

*Wesley Corp. v. Zoom T.V. Prods., LLC*,
No. 17-10021, 2018 WL 372700 (E.D. Mich. Jan. 11, 2018)................................13

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

*Zimmerman v. Pensler*,
No. 2:23-cv-11634, 2025 WL 1493271 (E.D. Mich. May 26, 2025).....................14

**Other Authorities**

Fed. R. Civ. P. 37 advisory committee's notes (1970)..........................................22

**Rules**

Fed. R. Civ. P. 26(b)(1) ..........................................................9, 12, 13, 14

Fed. R. Civ. P. 30(a)(1)..........................................................................20

Fed. R. Civ. P. 33 ....................................................................................9

Fed. R. Civ. P. 33(a)(2)............................................................................9

Fed. R. Civ. P. 33(b)(1) ..........................................................................10

Fed. R. Civ. P. 33(b)(2) ..........................................................................10

Fed. R. Civ. P. 34(a) ..............................................................................10

Fed. R. Civ. P. 34(b)(2) ..........................................................................10

Fed. R. Civ. P. 34(b)(2)(C) .................................................................10, 19

Fed. R. Civ. P. 37(a)(1).......................................................................20, 21

Fed. R. Civ. P. 37(a)(3)(B)(*iii*)-(*iv*) ...................................................10

Fed. R. Civ. P. 37(a)(4).......................................................................11, 17

Fed. R. Civ. P. 37(a)(5)(A) ...................................................................21

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

## INTRODUCTION

Plaintiff moves the Court to compel Defendant Diesel Global Logistics, Inc. to properly answer Plaintiff's written discovery, some of which has been outstanding for almost a year. DGL has failed to fully and adequately respond to Plaintiff's Second Set of Interrogatories, trotting out the same answer to different questions. Likewise, DGL has not produced supplemental answers, nor has it produced additional documents in response to Plaintiff's First Set of Interrogatories and Request for Production of Documents, even though the information and documents sought were within the scope of discovery. Worse still, despite being a defendant in this case for over a year, DGL has failed to agree to dates for the deposition of its corporate representative or dispatcher who assigned the load being transported by FJ Carrier at the time of the crash.

Thus, the Court should grant Plaintiff's motion, compel DGL to answer Plaintiff's discovery, compel DGL and its dispatcher to appear for depositions, and award Plaintiff the costs and attorney fees incurred in bringing this Motion.

## STATEMENT OF FACTS

This case arises from a tractor-trailer versus motorcycle collision that occurred on August 29, 2023. *See* First Am. Compl. ¶ 6, ECF No. 31, PageID.1237. The Court has previously discussed the factual background of the collision in its

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

Opinion and Order Granting in Part and Denying in Part Defendants' Motion for Partial Judgment on the Pleadings. *See generally* ECF No. 80, PageID.2040-41.

Relevant here, Plaintiff has also alleged that Defendant Diesel Global Logistics, Inc. (DGL) was negligent in its role as a freight forwarder by hiring, selecting, contracting, or otherwise engaging with Defendant FJ Carrier Logistics LLC to transport the load at the time of the crash. *See* First Am. Compl. ¶¶ 31-46, PageID.1247-53.

Freight forwarders, like DGL, "are the transportation industry's matchmakers, connecting sellers of goods to the carriers who move them." *See Montgomery v. Caribe Transp. II, LLC*, 608 U.S. 219, 222-23 (2026). Here, DGL did just that. DGL and FJ Carrier entered a "Freight Forwarder/Motor Carrier Agreement" in June 2023, where FJ Carrier agreed to provide transportation services as requested by DGL and DGL agreed to assign FJ Carrier a minimum of one shipment per year. Exhibit 1: Freight Forwarder/Motor Carrier Agreement.

In August 2023, Rassini Frenos S.A. de C.V. contacted DGL to arrange for a motor carrier to pick up a load of automotive parts for Ford Motor Company from Rassini's facility in Puebla, Mexico and deliver it to Hollingsworth Logistics, located in Brownstown, Michigan. DGL assigned the load to FJ Carrier. This created the following chain connecting the shipment of the load from origin to destination:

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575




Much of how this came to be, however, is unknown to Plaintiff. Thus, Plaintiff sought discovery from DGL that would shed light on how DGL came to receive the load, and how FJ Carrier was chosen and selected by DGL to serve as the motor carrier transporting the load.

For instance, Plaintiff sought to understand the relationship between DGL and FJ Carrier, including how often the two had worked together:

> 4. Describe your relationship with Defendants MARCO POLO PASTRANA-JIMENEZ and/or FJ CARRIER LOGISTICS LLC prior to the events forming the basis of this lawsuit, including the extent, how often, when, where, and under what circumstances that you had previously worked with either.
>
> **ANSWER: Diesel Global Logistics, Inc. has been a freight forwarder with FJ Carrier Logistics LLC since June of 2023 and has no relationship with FJ Carrier Logistics LLC's driver.**

Exhibit 2. DGL's Supp. Ans. to Pl.'s First Set of Interrogatories #4.

Plaintiff also sought to discover information about how DGL offered the load to FJ Carrier and how FJ Carrier accepted the load assignment:

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

> 12. Regarding the load, DGL741520, please state when and how FJ CARRIER LOGISTICS LLC and/or MARCO POLO PASTRANA-JIMENEZ first accepted the load. This includes the time and date, as well as the method by which the load was accepted (e.g. mobile app, desktop website, verbally on the telephone, etc.).
>
> **ANSWER: Diesel Global Logistics, Inc.'s pick-up information is communicated electronically.**

*Id.* at #12.

And since DGL was required to assign at least one load to FJ Carrier, Plaintiff sought to discover whether the parties interacted on a more frequent basis than what was required by their contract:

> 19. Please provide a breakdown of the number of loads DIESEL GLOBAL LOGISTICS, INC. has brokered, arranged, or freight forwarded, for the last 10 (ten) years, including how many loads for each motor carrier involved.
>
> **ANSWER: Defendant objects to this interrogatory as overbroad and unduly burdensome. Moreover, the information sought is not readily obtainable, irrelevant or substantially prejudicial and not designed to lead to the discovery of admissible evidence.**

*Id.* at #19.

Likewise, Plaintiff attempted to ascertain whether there would be insurance coverage that would cover motor carriers assigned to transport a load by DGL:

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

20. State whether DIESEL GLOBAL LOGISTICS, INC., provides liability insurance to, or has any policy of liability insurance which would extend coverage to, a motor carrier or its driver while hauling loads arranged by DIESEL GLOBAL LOGISTICS, INC.

**ANSWER: Defense counsel previously advised Plaintiff's counsel that Century Surety Company informed Diesel Global Logistics, Inc., that there is no coverage for this incident.**

*Id.* at #20.

In response, DGL provided answers that failed to answer the questions asked. This trend continued in DGL's answers to Plaintiff's Second Set of Interrogatories:

1. Identify every motor carrier, broker, freight forwarder, logistics company, or other entity involved in the transportation of the Load from its point of origin to its intended destination, and for each entity identified, state: (a) the full legal name; (b) the principal place of business; (c) the USDOT number, if any; (d) the MC number, if any; (e) the role performed in transporting the Load; (f) the segment of transportation performed; (g) the dates of involvement; and (h) the identity of any agreement governing the relationship.

**ANSWER: FJ Carrier Logistics LLC. See attached motor carrier agreement.**

Exhibit 3: DGL's Ans. to Pl.'s Second Set of Interrogatories #1.

Despite each question in Plaintiff's Second Set of Interrogatories containing multiple subparts, DGL failed to answer any of them, deciding to answer the question they wanted to answer, rather than the question asked. *See id.*

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

DGL has also failed to supplement its answers to Plaintiff's request for production of documents. Plaintiff had requested DGL produce documents pertaining to the assignment of the load to FJ Carrier. DGL responded by saying:

> 5. Produce any and all documentation whatsoever, including but not limited to emails, text messages, instant messages, or any other correspondence, pertaining to the load, DGL741520.
>
> **ANSWER: Objection as this request as vague, overbroad, and unduly burdensome. Moreover, it requests information that is protected under the attorney client privilege and/or the work product doctrine. However, for the purpose of this discovery only and without waiving said objection, see attached correspondence.**

Exhibit 4: DGL's Ans. to Pl.'s First Request for Production of Documents.

Despite this answer, there were no documents attached showing correspondence pertaining to the load. Moreover, DGL did not indicate if it was withholding documents that would otherwise be responsive to this request subject to its objections.

Plaintiff also sought the production of other relevant documents from DGL, such as records of any payments made by DGL to FJ Carrier for commercial transportation services, dispatch records kept by DGL pertaining to FJ Carrier, and company policies that were in place to determine the assignment of loads:

> 14. A copy of any ledger, log, or record indicating payments made by you to FJ CARRIER LOGISTICS LLC in the last three years for commercial transportation services rendered by FJ CARRIER LOGISTICS LLC and/or MARCO POLO PASTRANA-JIMENEZ.
>
> **ANSWER: Objection as to form. Defendant further objects to this request as vague, overbroad, and unduly burdensome. Moreover, the information sought is irrelevant or substantially prejudicial and not designed to lead to the discovery of admissible evidence.**

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

> 20. To the extent not already produced, produce a copy of any dispatch logs, records, manifests, or documents kept by you concerning FJ CARRIER LOGISTICS LLC and/or MARCO POLO PASTRANA-JIMENEZ for the past three years.
>
> **ANSWER: Objection as to form. Defendant further objections as this request as vague, overbroad, and unduly burdensome. Moreover, the information requested is irrelevant or substantially prejudicial. However, for the purpose of this discovery only and without waiving said objection, Defendant is compiling the requested documents and will supplement this response upon receipt.**

> 25. A copy of any company handbook, policy manual, or other guidelines concerning the transportation of loads, retention of commercial motor carriers as authorized carrier partners, the qualification of commercial motor carriers and/or commercial drivers, and the brokerage of shipments.
>
> **ANSWER: Objection as this request as vague, overbroad, and unduly burdensome. However, for the purpose of this discovery only and without waiving said objection, Defendant is compiling the requested documents and will supplement this response upon receipt.**

*Id.* at #14, 20, and 25.

Again, despite the promise that answers would be supplemented, DGL has yet to provide the materials requested, over a year after promising to do so. The same is true for DGL's answers to Plaintiff's Second Request for Production of Documents:

> 77. Please produce any and all documents reflecting Your review of safety data, SMS scores, or FMCSA records for FJ Carrier Logistics LLC.
>
> **RESPONSE: Defendant is reviewing this request, and any responsive documents will be forwarded on receipt.**

78. Please produce any and all documents reflecting Your review of safety data, SMS scores, or FMCSA records for any motor carrier involved in transporting the Load.

**RESPONSE: Defendant is reviewing this request, and any responsive documents will be forwarded on receipt.**

Exhibit 5: DGL's Ans. to Pl.'s Second Request for Production of Documents.

Lastly, Plaintiff has sought to obtain the depositions of DGL (through its designated corporate representative) and its dispatcher who assigned the load at issue to FJ Carrier. Despite Plaintiff seeking to obtain these depositions for months, DGL has failed to provide dates for these depositions to occur.

Plaintiff, for his part, has done everything possible to avoid seeking Court intervention to obtain this discovery. Plaintiff's counsel has sent numerous emails spanning months to counsel for DGL in an effort to secure the discovery sought without Court intervention. The response has always been that DGL will supplement, yet nothing would ever come.

Thus, with the discovery cutoff approaching, Plaintiff sought to hold a meet-and-confer with counsel for DGL. *See* Exhibit 6: E-mail from Counsel to Plaintiff for Counsel to DGL. In response, counsel for DGL stated that they would produce the supplemental answers and documents sought by April 14, 2026. Exhibit 7: E-mail from Counsel for DGL to Counsel for Plaintiff.

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

April 14th came and went, and nothing was received. So Plaintiff proceeded to the second step of the Court's discovery dispute protocol and requested a status conference to discuss these issues. The Court held this conference on May 11, 2026. The Court ordered responses to be completed by May 18, 2026, and granted Plaintiff leave to file a discovery motion if the deadline was not complied with. Since this deadline was imposed, DGL has not cured the issues pertaining to its answers discussed above, necessitating the instant motion.

## ARGUMENT

Plaintiff is permitted to obtain discovery regarding any nonprivileged matter that is relevant to his claims and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Determining the scope of discovery requires consideration of, among other things, the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, and the importance of the discovery in resolving the issues. *Id.* Information within the scope of discovery "need not be admissible in evidence to be discoverable." *Id.*

One device available to conduct discovery is the submission of interrogatories to parties. *See* Fed. R. Civ. P. 33. An interrogatory may relate to any matter that may be inquired into under Rule 26(b). Fed. R. Civ. P. 33(a)(2). Once served, the party to whom the interrogatories are directed (or the officer or agent of a corporation, partnership, association, or governmental agency) must serve its answers or any

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

objections within thirty days. Fed. R. Civ. P. 33(b)(1)-(2). The failure to timely object to an interrogatory generally constitutes the waiver of any objections, including work product and attorney client material. *Gonzales v. Ohio Cas. Ins. Co.*, No. 07-CV-13921, 2008 WL 795757, at *1 (E.D. Mich. 2008).

Parties may also propound requests for another party to produce documents within their possession, custody, or control. Fed. R. Civ. P. 34(a). Like interrogatories, a party has thirty days after being served with a request to produce answers or objections. Fed. R. Civ. P. 34(b)(2). When a party objects to a request to produce documents, the objection "must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). The failure to respond to a request within thirty days likewise results in the answering party waiving any objections to production. *See Bell v. Korkis*, No. 2:19-cv-13565, 2023 WL 11951037, at *10 (E.D. Mich. Oct. 12, 2023) (stating that the failure to object as provided by Rule 34 generally constitutes waiver of any objections).

When a party fails to answer interrogatories asked under Rule 33 or fails to produce documents as requested under Rule 34, the party seeking discovery may move for an order compelling answers to interrogatories and the production of documents. Fed. R. Civ. P. 37(a)(3)(B)(*iii*)-(*iv*). When evaluating a party's answers or production under Rule 37, an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ.

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

P. 37(a)(4). Answers to discovery must be responsive, full, complete, and not evasive. *Miller v. Joaquin*, 431 F. Supp. 3d 906, 922 (E.D. Mich. 2019). Thus, a party "may not defer answering or refuse to answer . . . by suggesting that the information may be forthcoming." *Id.* (quoting *Jones-McNamara v. Holzer Health Sys.*, No. 2:13-cv-616, 2014 WL 3563406 at *1 (S.D. Ohio July 18, 2014)).

## I. DGL should be required to produce supplemental answers to Plaintiff's First Set of Interrogatories because the answers are incomplete and evasive

DGL submitted answers to Plaintiff's First Set of Interrogatories that are incomplete and evasive, and they should be treated as a failure to respond. *See* Fed. R. Civ. P. 37(a)(4). Start with DGL's answer to interrogatory No. 4, where Plaintiff asked DGL to describe its relationship with FJ Carrier "including the extent, how often, when, where, and under what circumstances [DGL] had previously worked with" it. Pl.'s First Set of Interrogatories #4. In response, DGL answered:

> **ANSWER: Diesel Global Logistics, Inc. has been a freight forwarder with FJ Carrier Logistics LLC since June of 2023 and has no relationship with FJ Carrier Logistics LLC's driver.**

Ex. 2 at #4.

This response does not fully answer the interrogatory Plaintiff submitted. DGL answered when it first entered a relationship with FJ Carrier, but did not address how often, when, where, or under what circumstances the two had previously worked together. Because the answer fails to address most of what was

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

asked, it is neither full nor complete, and the Court should treat it as an incomplete answer for which a supplemental answer is required. *See Miller*, 431 F. Supp. 3d at 922. The information sought by this interrogatory bears on Plaintiff's direct negligence claims against DGL because it is relevant to whether DGL was negligent in selecting FJ Carrier to transport the load leading to the collision, placing the information sought within the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1).

DGL's answer to interrogatory No. 12 is likewise insufficient and evasive. There, Plaintiff requested DGL state "when and how FJ Carrier first accepted the load. This includes the time and date, as well as the method by which the load was accepted (e.g. mobile app, desktop website, verbally on the telephone, etc.)." Pl.'s First Set of Interrogatories #12 (citation modified). In response, DGL stated:

> **ANSWER: Diesel Global Logistics, Inc.'s pick-up information is communicated electronically.**

Ex. 2 at #12.

This response does not answer the question at all. Despite asking for the date and time FJ Carrier accepted the load DGL had offered, DGL states only that the information is communicated electronically. But that answer alone does not say if that acceptance was communicated through e-mail, mobile app, website, or another modality. This information is relevant because it shows how the parties interacted. FJ Carrier could not have known a load was waiting without some communication from DGL; there had to be communication between the parties. This information

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

would also show if there were additional documents or ESI that could be requested to show the parties' interaction concerning the assignment and acceptance of the load. *See* Fed. R. Civ. P. 26(b)(1). Yet, DGL's answer is so unresponsive that no answer at all would have been equally informative, so the Court should compel DGL to produce a full and complete supplemental answer. *See Miller*, 431 F. Supp. 3d at 922.

DGL's answer to interrogatory No. 19 fares no better. There, Plaintiff asked DGL to provide a breakdown of the number of loads it has "brokered, arranged, or freight forwarded, for the last 10 (ten) years, including how many loads for each motor carrier involved." Pl.'s First Set of Interrogatories #19. DGL responded:

> **ANSWER: Defendant objects to this interrogatory as overbroad and unduly burdensome. Moreover, the information sought is not readily obtainable, irrelevant or substantially prejudicial and not designed to lead to the discovery of admissible evidence.**

Ex. 2 at #19.

DGL's boilerplate objection should be disregarded. A "boilerplate" objection is one that is "invariably general" and "states the legal grounds for the objection without (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it was forced to respond to the request." *Wesley Corp. v. Zoom T.V. Prods., LLC*, No. 17-10021, 2018 WL 372700, at *9-10 (E.D. Mich. Jan. 11, 2018) (citation omitted). "A general objection that interrogatories are onerous and burdensome and require the party to make research

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

and compile data *raises no issue*." *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 405 (N.D. Ohio 2011) (emphasis added). Rather, the objection must make a "*specific showing* of reasons why the interrogatory should not be answered." *Id.* (quoting *Trabon Eng'g Corp. v. Eaton Mfg. Co.*, 37 F.R.D. 51, 59 (N.D. Ohio 1964)).

DGL's objection fails for a second reason: it is based on the wrong standard. DGL has objected because, it believes, the information sought is "not designed to lead to the discovery of admissible evidence." But that is the wrong standard. Indeed, "objections based on a claim that a discovery request is not 'reasonably calculated to lead to admissible evidence' rely on an outdated standard." *Design Basics v. DJW & Assocs. of Mich.*, No. 17-12272, 2019 WL 7584399, at *2-3 (E.D. Mich. Aug. 6, 2019). And when a party makes an objection based on the wrong legal standard, the objection should be overruled. *See, e.g.*, *Zimmerman v. Pensler*, No. 2:23-cv-11634, 2025 WL 1493271, at *4 (E.D. Mich. May 26, 2025) (overruling objections made based on the wrong standard).

The information sought by Plaintiff is well within the scope of discovery. DGL's history with other motor carriers and entities goes directly to the heart of Plaintiff's negligence claims because such history goes to show whether DGL knew FJ Carrier was unfit to serve as a motor carrier for the load DGL assigned. *See* Fed. R. Civ. P. 26(b)(1).

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

Finally, DGL was asked to state if it "provides liability insurance to, or has any policy of liability insurance which would extend coverage to, a motor carrier or its driver while hauling loads arranged by" DGL. Pl.'s First Set of Interrogatories #20. DGL provided the following answer:

> **ANSWER: Defense counsel previously advised Plaintiff's counsel that Century Surety Company informed Diesel Global Logistics, Inc., that there is no coverage for this incident.**

Ex. 2 at #20.

Yet again, DGL chose to answer the question it wanted rather than the one posed. DGL's answer addresses only one specific insurer's coverage position on this incident, leaving unanswered whether DGL maintains any other policies that would cover motor carriers transporting loads it assigned. Moreover, Plaintiff's interrogatory did not ask whether coverage had been afforded to DGL by its insurer, it sought to ascertain whether DGL maintained insurance coverage that would cover motor carriers like FJ Carrier when they were transporting loads assigned by DGL. DGL's answer does not address that question. Thus, a supplemental response should be provided. *See Miller*, 431 F. Supp. 3d at 922.

## II. DGL should likewise be compelled to provide supplemental answers to Plaintiff's Second Set of Interrogatories as its answers do not respond to the questions asked

DGL should be required to serve supplemental answers to Plaintiff's Second Set of Interrogatories. Plaintiff served DGL with three interrogatories on February 11,

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

2026. These interrogatories contained numerous subparts requiring DGL to produce specific information in response to each. DGL's answers, in their entirety, were as follows:

> 1. Identify every motor carrier, broker, freight forwarder, logistics company, or other entity involved in the transportation of the Load from its point of origin to its intended destination, and for each entity identified, state: (a) the full legal name; (b) the principal place of business; (c) the USDOT number, if any; (d) the MC number, if any; (e) the role performed in transporting the Load; (f) the segment of transportation performed; (g) the dates of involvement; and (h) the identity of any agreement governing the relationship.
>
> **ANSWER: FJ Carrier Logistics LLC. See attached motor carrier agreement.**

> 2. Describe in detail how You came to be assigned the Load, including: (a) the date You first learned of the Load; (b) the entity that tendered the Load to You; (c) the method by which the Load was tendered; (d) the identity of any load board, platform, or system used; (e) whether the Load was brokered to You by another broker; and (f) the identity of any intermediary between the shipper and You.
>
> **ANSWER: Upon information and belief Rassini Frenos S.A.DE C.V. was the manufacturer who sold the load to Ford Motor Companies. Diesel Global was the freight forwarding company.**

> 3. Identify the motor carrier that transported the trailer involved in the collision from its point of origin in Puebla, Mexico to Nuevo Laredo, Mexico, and state: (a) the full legal name; (b) the principal place of business; (c) the USDOT number, if any; (d) the MC number, if any; (e) the Mexican SCT permit number, if any; (f) the name of the driver or drivers; (g) the dates of transportation; (h) the identity of any agreement between You and this motor carrier; and (i) the identity of this motor carrier's liability insurance carrier and policy number.
>
> **ANSWER: FJ Carrier Logistics LLC**

Ex. 3.

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

As discussed in section I, *supra*, an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Answers to discovery must be responsive, full, complete, and not evasive. *Miller*, 431 F. Supp. 3d at 922.

Here, DGL's answers are not responsive, full, or complete, and should be treated as a failure to respond. The interrogatories contained numerous subparts and requested significant amounts of information that DGL fails to provide in its answers. For instance, DGL fails to state the dates of involvement, the method by which the load was tendered to DGL, whether the load was brokered to DGL by a broker (or another freight forwarder), or whether there was an intermediary between DGL and FJ Carrier that was not previously identified. DGL never raised any objections to these interrogatories, but its answers are incomplete and do not answer the questions posed. Thus, DGL should be required to supplement its answers to Plaintiff's Second Set of Interrogatories by fully and completely answering all three interrogatories, including subparts. *See id.*

**III. DGL should be compelled to produce documents responsive to Plaintiff's requests because its objections are boilerplate and DGL has had ample time to compile responsive documents**

Plaintiff has also sought to obtain documents responsive to its First and Second Requests for Production of Documents directed toward DGL. Specifically, Plaintiff requested DGL to produce the following types of documents:

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

- Documentation, including but not limited to emails, text messages, instant messages, or any other correspondence, pertaining to the load, DGL741520;
- A copy of any ledger, log, or record indicating payments made by DGL to FJ Carrier in the last three years for commercial transportation services rendered by FJ Carrier and/or Marco Polo Pastrana-Jimenez;
- To the extent not already produced, produce a copy of any dispatch logs, records, manifests, or documents kept by you concerning FJ Carrier and/or Marco Polo Pastrana-Jimenez;
- A copy of any company handbook, policy manual, or other guidelines concerning the transportation of loads, retention of commercial motor carriers as authorized carrier partners, the qualification of commercial motor carriers and/or commercial drivers, and the brokerage of shipments;
- Any and all documents reflecting DGL's review of safety data, SMS scores, or FMCSA records for FJ Carrier; and
- Documents reflecting Your review of safety data, SMS scores, or FMCSA records for any motor carrier involved in transporting the Load.

Ex. 4; Ex. 5.

In response to Plaintiff's First Request No. 5, DGL objected:

> **ANSWER: Objection as this request as vague, overbroad, and unduly burdensome. Moreover, it requests information that is protected under the attorney client privilege and/or the work product doctrine. However, for the purpose of this discovery only and without waiving said objection, see attached correspondence.**

As discussed above, DGL's objections fail for two reasons. First, DGL does not provide any information to substantiate its claim that the request is unduly burdensome or overbroad. Second, DGL's objections based on work product or attorney client privilege are waived. DGL served answers to this request on February

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

18, 2025, but the requests were served on January 3, 2025, meaning more than thirty days had passed, even after Plaintiff had granted DGL an extension to respond until February 14, 2025. Exhibit 8: E-mail granting extension to respond. By not responding within this time frame, DGL waived all objections to these requests. *See Bell*, 2023 WL 11951037, at *10 (stating that the failure to object as provided by Rule 34 generally constitutes waiver of any objections); *Gonzales*, 2008 WL 795757, at *1 (stating that waiver of objections included objections on the basis of work product and attorney client privilege).

Moreover, DGL did not actually attach documents showing the correspondence referenced in its answer. And worse still, even if DGL claims that it did produce documents responsive to this request, its response is deficient for yet another reason: it did not state if responsive material was otherwise being withheld on this basis of its objections. *See* Fed. R. Civ. P. 34(b)(2)(C). Thus, Plaintiff is left to guess whether there exists additional documentation that DGL should be compelled to produce.

As for DGL's remaining responses to Plaintiff's requests for production, in both Plaintiff's first and second request for production, DGL stated that it was gathering responsive material and that it would supplement the responses upon receipt of information. It has now been over a year since Plaintiff served the first request for production of documents and it has been months since Plaintiff served

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

the second request for production of documents. Simply put, DGL has had more than enough time to gather the documents requested and has produced nothing. And since a party "may not defer answering or refuse to answer . . . by suggesting that the information may be forthcoming[,]" *Miller*, 431 F. Supp. 3d at 922, DGL should be compelled to produce responsive documents or certify under oath that no responsive documents exist.

## IV. DGL and the dispatcher who assigned the load at issue in this case should be compelled to appear for depositions

A party may "by oral questions, depose any person, including a party . . . ." Fed. R. Civ. P. 30(a)(1). "If the opposing party refuses to make individuals available for deposition, the requesting party may move for an order compelling these depositions." *Harding v. Steak N Shake, Inc.*, No. 1:21-cv-01212, 2022 WL 152498, at *1 (N.D. Ohio Jan. 18, 2022) (citing Fed. R. Civ. P. 37(a)(1)). A motion to compel a deposition is properly made after a proper notice for a deposition has been served. *See Firestone Fin. Corp. v. AB Marketing LLC*, No. 1:12-CV-446, 2013 WL 3813516, at *1 (S.D. Ohio July 22, 2013).

In this case, DGL has refused to make a corporate representative available to testify nor has it made its dispatcher who assigned the load to FJ Carrier available for a deposition. Plaintiff has previously noticed both of these depositions to occur, yet Defendant did not appear or produce those witnesses at that time. *See* Exhibit 9: Dep. Not. Pat Hofacre; Exhibit 10: Dep. Not. Jose Sanchez. Thus, the Court should

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

enter an order compelling DGL to produce Pat Hofacre and Jose Sanchez for depositions. *See* Fed. R. Civ. P. 37(a)(1).

## V. Plaintiff should be awarded the costs incurred in having to bring this motion because DGL's conduct was not substantially justified and no circumstances make an award of expenses unjust

Under Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "At its core, Civil Rule 37 'establishes the mechanisms by which' other discovery rules 'can be made effective.'" *Curtis v. Deutsche Bank*, 829 F. Supp. 3d 303, 320 (E.D. Mich. 2025) (citation omitted). When a motion under Rule 37 is granted, or if the discovery sought in that motion is provided after the motion is filed,

> the court ***must***, after giving an opportunity to be heard, ***require*** the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both ***to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.*** But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

This rule "compels the court to levy sanctions unless one of the exceptions is met." *State Farm Mut. Auto. Ins. Co. v. Hawkins*, No. 08-CV-10367-DT, 2008 WL

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

5383855, at *4 (E.D. Mich. Dec. 23, 2008). This mandatory award of costs, unless an exception applies, "is intended to encourage judges to be more alert to abuses occurring in the discovery process." *Id.* (quoting Fed. R. Civ. P. 37 advisory committee's notes (1970)). Especially since "the potential or actual imposition of expenses is virtually the sole formal sanction in the rules to deter a party from pressing to a court hearing frivolous requests for or objections to discovery." *Id.*

Here, should the Court grant the instant Motion, Plaintiff is entitled to an award of expenses, including attorney's fees, for bringing the instant motion. Plaintiff has filed the motion following an extensive effort to obtain the discovery without court action, contacting counsel for DGL over the course of a year to obtain this discovery, then proceeding through the Court's discovery dispute protocol. All of which failed through no fault of Plaintiff. Additionally, DGL's nondisclosures are not substantially justified. DGL has simply not responded to many of Plaintiff's discovery requests, whether it be in the form of interrogatories or requests to produce. There is no substantial justification for not answering interrogatories as asked or not supplementing answers a year after stating that it would take place. Moreover, no other circumstances make this award unjust. If anything, it would be unjust to require Plaintiff to endure significant expense and effort to obtain discovery he is otherwise entitled to receive.

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

Accordingly, should the Court grant Plaintiff's Motion, Plaintiff requests that the Court award the reasonable expenses incurred in making the motion, including attorney's fees.[1]

## CONCLUSION

Plaintiff patiently waited to no avail. DGL has failed to properly answer Plaintiff's Interrogatories and Requests for Production of Documents. Thus, for the foregoing reasons, Plaintiff requests that this Honorable Court grant Plaintiff's motion in its entirety and enter an order (1) compelling Defendant Diesel Global Logistics, Inc. to fully answer Plaintiff's Second Set of Interrogatories; (2) compelling DGL to supplement its answers to Plaintiff's First Set of Interrogatories; (3) compelling DGL to supplement its responses to Plaintiff's First Request for Production of Documents; (4) compelling depositions of DGL's corporate representative and dispatcher; and (5) awarding Plaintiff the reasonable costs and expenses, including attorney fees, incurred in bringing this Motion.

[1] Should the Court grant such relief, Plaintiff requests the ability to submit a declaration from the undersigned counsel to substantiate an award of attorney's fees.

Respectfully submitted,

MICHIGAN AUTO LAW, P.C.

BY: /s/ Leo J. St. Amour
LEO J. ST. AMOUR (P88642)
Attorney for Plaintiff

KEVIN H. SEIFERHELD (P58016)
ALEXANDER P. KEMP (P80963)
Attorneys for Plaintiff

Dated: September 17, 2026

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

## CERTIFICATE OF SERVICE

I hereby certify that Plaintiff's Motion to Compel was filed with the Clerk of Court using the Court's CM/ECF system, which sent a Notice of Electronic Filing (NEF) containing notice and a copy of the foregoing instrument to all counsel of record.

/s/ Leo St. Amour
Leo St. Amour