Exhibit 1

DIESEL GLOBAL LOGISTICS

# Freight Forwarder/Motor Carrier Agreement

A licensed Transportation Freight Forwarder Diesel Global Logistics, Inc FF-9001 ("DGL") and FJ CARRIER LOGISTICS LLC a licensed Contract Carrier MC 112466, ("Carrier"), in consideration of the mutual contained and Commencing on 6/12/2023 promises Herein , 2020 ("Effective"), Agree.

**SERVICES**, Carrier shall provide Transportation Services as an Independent Contractor as requested by DGL. DGL and Carrier agree to a Minimum of one (1) shipment per year under this Agreement. Services shall be performed in Compliance with all applicable State and Federal Laws and Regulations.

**CHARGES**, Charges for Services shall be determined on a load by load basis, and Carrier represents and Warrants that there are no other Rates, Charges Tariffs of Classifications applicable to Shipment or related Services under this Agreement. Carrier agrees not to Bill or Accept Payment from Shipper or Consignee of Third Party for Services rendered hereunder.

**PAYMENT**, DGL shall pay for Services within (30) Days of receipt of an Original Shipping Document signed by the Consignee showing completion of Shipment. DGL may with hold payment to satisfy claims for loss of damaged property or shortages, or advances to or payments made on behalf of Carriers, for the shipment being settled for any shipment under this Agreement.

**BILL OF LADING**, Shipments are by this Agreement. If the Terms of the Bill of Lading issued on a Shipment moving hereunder conflict with the provisions of this Agreement, then this Agreement Shall control. All references to rates, charges of governing tariffs of classifications in a Bill of Lading on a shipment moving hereunder are ineffective.

**INSURANCE,** Carrier shall Maintain at its own expense Commercial liability and automobile liability insurance with a minimum liability of $1,000,000 per occurrence for personal injury and property damage, and providing for a deductible no greater than $1,000 and cargo liability insurance with a minimum limit of $100,000 per shipment providing for deductible no greater than $1000. Carrier also agrees to obtain any additional insurance, which may from time to time be required on specific loads and as agreed between DGL and Carrier. Carrier shall deliver to DGL a Certificate naming DGL as an Additional insured under the aforementioned coverage prior to providing any services under this Agreement. Carrier further agrees to maintain Workers Compensation Coverage on its Employees as required by law. Should Carriers aforementioned polices be canceled Carrier agrees to inform DGL in Writing immediately. Carrier agrees to maintain above insurance with an admitted insurance carrier that has a quality financial rating of "B" or better.

**INDEMIFICATION, DUTY TO DEFEND AND HOLD HARMLESS,** Carrier agrees to defend indemnity and hold harmless DGL from and against any and all fines, penalties, claims costs, and expenses, including the cost of litigation and attorney fees, for regulatory violation property damage, cargo loss, death or injury to a person arising or of or in any way connected with Carriers performance of Breach of this agreement. Carrier's duties under this paragraph shall survive termination of this Agreement.

**TERMS,** either party may terminate this Agreement at will upon (30) days prior written notice. If either Party materially breaches Agreement, files Bankruptcy, is adjudicated Bankrupt, makes an assignment for the benefit of creditors, is insolvent, has a receiver appointed of sell all of substantially all of its assets, the other party may terminate this agreement at any time.

**TECHNICAL TERMS,** Successors and assignees of the parties shall be bound by this Agreement. Carrier may not assign or all of this Agreement without DGL's consent. This Agreement shall be construed and enforced under Texas Law. Venue for any Suit arising out of this Agreement shall be proper on El Paso County, Texas.

**NO BACK SOLICITATION,** Carrier shall not solicit traffic from any shipper, consignor, consignee, Customer of DGL, including but not limited to all where 1) the availability of such traffic first became known to Carrier as a result of DGLs efforts, of 2) where the traffic of the shipper consignor, consignee, or to Customer of DGL was first tendered to the carrier by the DGL. If Carrier breaches this Agreement and "Back-Solicits" the DGL's Customers and obtains traffic from such customer of customers then Carrier shall be obligated to pay DGL a commission equal to thirty percent (30%) of the gross transportation revenue received by Carrier from the movement of said traffic. Carrier's obligation to pay said obligation shall last for a period of twelve (12) months following the month in which Carrier fist moved traffic for said Customer not Brokered by agrees that delivery of a copy of this Agreement shall constitute a valid assignment of the percentage of Carriers gross payment received from Customer as stated above. This agreement shall serve as a directive authorizing Customer's said commission directly to DGL.

The Undersigned represent and warrant that they are authorized to enter this Agreement on behalf of their respective organizations.

| | | | |
|---|---|---|---|
| Date: | _ | Date: | 6/12/2023 |
| FF Name: | Diesel Global Logistics, Inc | Carrier Name: | FJ Carrier Logistics |
| Address: | 11 Founders Blvd Suite 300 | Address: | 221 Desert Palm Dr |
| City, State,Zip: | El Paso, Texas 79906 | City, State,Zip: | Laredo TX 78045 |
| Printed Name: | Pat Hofacre | Printed Name: | Ariel Gonzalez |
| Title: | President | Title: | Commercial Director |
| Signature: | _ | Signature: | _ |

# CONFIDENTIALITY AND NON-CIRCUMVENT AGREEMENT

This Confidentiality and Non-Circumvention Agreement (the "Agreement") is between Diesel Global Logistics, Inc, located at 11 Founders BLVD Suite 300, El Paso, TX 79906 ("DGL") and FJ CARRIER LOGISTICS located at 221 Desert Palm DR, Laredo TX 78045 ("Obligee").

## Recitals

DGL and Obligee are parties to a Brokerage-Carrier Agreement ("Brokerage Agreement" ) which contains certain confidentiality and non-circumvent provisions/agreements, a copy of which is attached hereto as Attachment "A" and which is incorporated herein by reference.

DGL desires to convey the confidential information ("Confidential Information") to Obligee pursuant to the Brokerage Agreement (and/or in any other manner the confidential information is conveyed by DGL to Obligee}, but only if Obligee agrees: [1] to undertake to strictly observe and comply with all of the obligations set forth herein, such undertaking being for the benefit of both DGL and Obligee; and [2] not to circumvent DGL with respect to the Confidential Information.

Obligee desires to be made privy to be Confidential Information upon the terms and conditions set forth herein.

## Agreement

For good and valuable consideration, the receipt, sufficiency and adequacy of which is hereby agreed and acknowledged, Obligee hereby further agrees as follows:

Obligee hereby agrees to strictly observe and comply with all of the obligations of this Agreement.

Obligee further agrees not to circumvent DGL with respect to the Confidential Information.

Obligee acknowledges that disclosure or use of the Confidential Information other than as expressly authorized by DGL, would, in all reasonable probability, be a cause of substantial and irreparable harm to DGL including, without limitation, damages arising from unfair competition. Obligee hereby represents that it will keep and hold the Confidential Information in strict confidence and will not use or disclose same at any time without DGL's express written permission. Obligee agrees that Obligee shall protect the confidentiality of the Confidential Information using efforts no less protective than those Obligee uses to protect Obligee's own confidential and/or proprietary information and in no event less protective than those efforts generally accepted as industry standards, including disclosure of the Confidential Information to Obligee's employees or agents, if any, only on a "need to know" basis and provided that Obligee requires that such employees or agents bind themselves in writing to observe all of Obligee's confidentiality obligations under this Agreement. Obligee hereby agrees to indemnify, hold harmless and defend DGL from any and all claims of any nature arising from any unauthorized use or disclosure of the Confidential Information by or through Obligee and/or from all damages, losses, costs and/or expenses caused by or arising from any unauthorized use or disclosure of the Confidential Information by Obligee or those to whom Obligee has imparted the Confidential Information. Obligee hereby further agrees that Obligee's confidentiality obligations and non-use/non-circumvention under this agreement shall: [1] survive the termination of this Agreement, regardless of the reason or termination; and [2] continue for so long as the Confidential Information remains confidential. Obligee hereby further agrees that any breach, threatened or actual, by Obligee of Obligee's confidentiality and non-use/non-circumvention obligations under this Agreement shall be a cause of irreparable harm to DGL, for which, in all reasonable probability, there will be no adequate remedy at law and shall constitute good cause for DGL to obtain injunctive or other equitable relief against Obligee without notice to the Obligee as necessary to prevent the

continuation of the breach, in addition to any and all other remedies for damages as may be available to DGL. Obligee hereby waives any requirement that DGL post a bond in connection with any equitable relief sought by DGL relative hereto. Obligee hereby assigns to DGL and agrees to keep and hold the profits, benefits and/or proceeds of any violation of its confidentiality and non-use/non-circumvention obligations hereunder in trust for DGL and to tender same to DGL within a reasonable time upon DGL's request.

Obligee hereby agrees: that this Agreement shall be deemed to have been made under and shall be governed by and construed in accordance with the laws of the State of Texas without regard to its conflict of laws principals; that Obligee shall be subject to, and hereby submits to, personal jurisdiction and venue in the State of Texas , County of El Paso, in connection with this Agreement; and that the only forum for any civil action in connection with this Agreement will be a court of general jurisdiction in the State of Texas, County of El Paso. Should DGL be the prevailing party on any claim or defense in such civil action, including counterclaims, cross claims and/or third party claims, between the parties arising under or related to this Agreement, DGL shall be awarded its costs, expenses and attorney fees incurred in connection therewith.

No partnership or joint venture or similar such relationship shall be deemed to have been created or to exist under this Agreement. This agreement shall inure to the benefit of DGL and its successors and/or assigns.

This agreement constitutes the complete, comprehensive and final agreement of the Parties with respect to the subject to the subject matter hereof and supersedes all prior or contemporaneous discussions, negotiations, statements, promises or representations, if any, relating to the subject matter hereof. No amendment or modification of this Agreement shall be enforceable against DGL unless same is reduced to a written and signed by DGL's manager.

If one or more of the provisions in this Agreement is deemed invalid, void or unenforceable by law, then the remaining provisions will continue in full force and effect. Moreover, if any one or more of the provisions contained in this Agreement shall be held to be excessively broad or partially invalid, illegal or unenforceable, it shall be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall appear.

Obligee agrees that any failure by DGL to enforce any provision of this Agreement or to exercise any right under this Agreement shall not be construed as a waiver thereof in the future. A notice to, or demand on, Obligee that is given even though not required to be given does not entitle Obligee to notice or demand similar or other circumstances, and does not waive DGL's right to take other or further action in any circumstances, including similar circumstances, without notice or demand.

This Agreement is the product of the negotiation and preparation by, between and among the parties and their attorneys, if any. Accordingly, the parties hereto acknowledge and agree that this Agreement shall not be deemed prepared or drafted by one party or another or the attorney's for one party or another, and shall be construed accordingly.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year respectively set forth below.

| | | | |
|---|---|---|---|
| Date: | _______________ | Date: | 6/12/2023 |
| FF Name: | Diesel Global Logistics, Inc | Carrier Name: | FJ Carrier Logistics |
| Address: | 11 Founders Blvd Suite 300 | Address: | 221Desert Palm Dr |
| City, State,Zip: | El Paso, Texas 79906 | City, State,Zip: | Laredo TX 78045 |
| Printed Name: | Pat Hofacre | Printed Name: | Ariel Gonzalez |
| Title: | President | Title: | Commercial Director |
| Signature: | _______________ | Signature: | _______________ |