Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| James McDonald,<br><br>Plaintiff,<br><br>vs.<br><br>FJ Carrier Logistics, LLC, *et al.*,<br><br>Defendants. | Case No. 2:24-cv-10049-BRM-CI<br>Hon. Brandy R. McMillion<br>Mag. Curtis Ivy, Jr.<br><br>*** **Oral Argument Requested** *** |

**PLAINTIFF'S RESPONSE TO DEFENDANT FJ CARRIER LOGISTICS LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND/OR DISMISSAL OF CERTAIN CLAIMS UNDER RULE 12(C) (ECF No. 93)**

NOW COMES Plaintiff, James McDonald, by and through his attorneys, Michigan Auto Law, P.C., and for his Response to Defendant FJ Carrier Logistics LLC's Motion for Partial Summary Judgment and/or Dismissal of Certain Claims under Rule 12(c) (ECF No. 93), states as follows:

1. Plaintiff admits that this Court has subject matter jurisdiction over this action because it was removed to this Court, *see* 28 U.S.C. § 1441, and the Court would otherwise have original jurisdiction because there is complete diversity between Plaintiff and all Defendants and the amount in controversy exceeds $75,000. *Id.* § 1332(a).

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

2. Plaintiff admits that this case arises from an August 29, 2023 motor vehicle collision where Plaintiff was catastrophically injured because of Defendants' negligence.

3. Defendant FJ Carrier is not entitled to summary judgment regarding Plaintiff's direct negligence claims because there is sufficient evidence to show that Defendant was negligent in entrusting its vehicle to Defendant Pastrana-Jimenez and in hiring, training, supervising, and monitoring him during his employment with FJ Carrier.

4. Plaintiff denies. First, this argument is barred by the law of the case doctrine as the Court previously considered and rejected the same argument in resolving Defendants' Motion for Partial Judgment on the Pleadings. *See* ECF No. 80. Even if it were not, FJ Carrier's argument fares no better on the merits. Michigan law allows for these claims to proceed, regardless of a defendant's admission of vicarious liability.

5. The Court did consider the arguments raised by Defendants and rejected them. In their Motion for Partial Judgment on the Pleadings, Defendants argued that if these claims were not dismissed, the Court should consider bifurcation. Since the Court reached the bifurcation issue, *see id.* at 12-13, the Court necessarily adjudicated the issue of whether these claims could proceed and decided that they did.

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

6. Plaintiff can present evidence to create a genuine issue of material fact regarding whether FJ Carrier was negligent in entrusting its vehicle to Defendant Pastrana-Jimenez and that Defendant was negligent in hiring, training, supervising, and monitoring Mr. Pastrana-Jimenez, which caused the crash to occur. *See* Statement of Additional Material Facts. Therefore, summary judgment should not be granted.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion for Partial Summary Judgment in its entirety.

Respectfully submitted,

MICHIGAN AUTO LAW, P.C.

BY: /s/ Leo J. St. Amour
KEVIN H. SEIFERHELD (P58016)
ALEXANDER P. KEMP (P80963)
LEO J. ST. AMOUR (P88642)
Attorneys for Plaintiff
kseiferheld@michiganautolaw.com
akemp@michiganautolaw.com
lstamour@michiganautolaw.com
esimon@michiganautolaw.com
30101 Northwestern Hwy.
Farmington Hills, MI 48334
248-353-7575
248-254-8081 (fax)

Dated: October 8, 2026

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| James McDonald,<br><br>Plaintiff,<br><br>vs.<br><br>FJ Carrier Logistics, LLC, *et al.*,<br><br>Defendants. | Case No. 2:24-cv-10049-BRM-CI<br>Hon. Brandy R. McMillion<br>Mag. Curtis Ivy, Jr. |

**BRIEF IN SUPPORT**

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

# TABLE OF CONTENTS

Concise Statement of Issues Presented ........ vi
Controlling or Most Appropriate Authority ........ vii
Table of Authorities ........ viii
Counter-Statement of Material Facts ........ 1
Additional Material Facts ........ 6
Introduction ........ 11
Standard of Review ........ 12
Argument ........ 13
I. Defendant's arguments are barred by the law-of-the-case doctrine because the Court has already rejected these same arguments ........ 13
II. Michigan law expressly allows Plaintiff's direct negligence claims against FJ Carrier to proceed ........ 14
III. Because Plaintiff has sufficient evidence to create a genuine issue of material fact regarding Plaintiff's direct negligence claims against FJ Carrier, summary judgment is not warranted ........ 21
Conclusion ........ 25

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

# CONCISE STATEMENT OF ISSUES PRESENTED

**I.** Under the law-of-the-case doctrine, is Defendant barred from relitigating the arguments presented in Part I of its motion when it previously raised the same arguments and the Court has previously rejected them?

Plaintiff answers: "Yes."

**II.** Should the Court permit Plaintiff to present separate and distinct negligence claims against FJ Carrier when decades of controlling precedent allows for direct negligence claims against an employer to proceed in cases where an admission of vicarious liability has been made?

Plaintiff answers: "Yes."

**III.** Should the Court deny Defendant's motion for summary judgment when there is sufficient evidence to create a genuine issue of material fact on Plaintiff's direct negligence claims against Defendant FJ Carrier?

Plaintiff answers: "Yes."

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

The controlling or most appropriate authority for Defendant's Motion for Summary Judgment is Federal Rule of Civil Procedure 56. The controlling or most appropriate authority for the arguments presented in response to Defendant's motion are:

- For Plaintiff's argument that the law-of-the-case doctrine bars relitigating Part I of Defendant's motion: *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)), which states that the law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."

- For Defendant's contention that direct negligence claims cannot proceed once there has been an admission of vicarious liability: *Elliott v. A. J. Smith Contracting, Co.*, 100 N.W.2d 257, 260 (Mich. 1960), which states that negligent entrustment and vicarious liability are two distinct, valid causes of action.

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................13

*Arizona v. California*,
460 U.S. 605 (1983)....................13

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
528 F.3d 426 (6th Cir. 2008)....................12

*Bennett v. Russell*,
913 N.W.2d 364 (Mich. Ct. App. 2018)....................21

*Bethel v. Jenkins*,
988 F.3d 931 (6th Cir. 2021)....................12

*Cox v. Bd. of Hosp. Managers for City of Flint*,
651 N.W.2d 356 (Mich. 2002)....................19

*Edmonds v. Smith*,
922 F.3d 737 (6th Cir. 2019)....................13

*Hindel v. Husted*,
875 F.3d 344 (6th Cir. 2017)....................12

*In re Kenneth Allen Knight Trust*,
303 F.3d 671 (6th Cir. 2002)....................14

*Kaiser v. Allen*,
746 N.W.2d 92 (Mich. 2008)....................19

*Lukas v. McPeak,*
730 F.3d 635 (6th Cir. 2013)....................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....................13

*Mayer v. Mylod*,
988 F.2d 635 (6th Cir. 1993)....................12

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

*Meridian Mut. Ins. Co. v. Kellman*,
197 F.3d 1178 (6th Cir. 1999) ....................17

*Modzelewski-Shekoski v. Bindig*,
No. 314830, 2014 WL 4656639 (Mich. Ct. App. Sept. 18, 2014) ....................17, 20

*Modzelewski-Shekoski v. Bindig*,
864 N.W.2d 558 (Mich. 2015) (mem.) ....................17

*Mueller v. Brannigan Bros. Rests. & Taverns LLC*,
918 N.W.2d 545 (Mich. Ct. App. 2018) ....................24

*Perin v. Peuler*,
130 N.W.2d 4 (1964) *overruled on other grounds by McDougall v. Schanz*, 461 Mich. 15, 597 N.W.2d 148 (1999) ....................16

*Prentis v. Yale Mfg. Co.*,
365 N.W.2d 176 (Mich. 1984) ....................18

*Scott v. Churchill*,
377 F.3d 565 (6th Cir. 2004) ....................13

*Smith v. E.R. Squibb & Sons, Inc.*,
273 N.W.2d 476 (Mich. 1979) ....................18

**Rules**

Fed. R. Civ. P. 56(a) ....................12

**Treatises**

18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4478 (3d ed. April 2026 update) ....................13

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

## COUNTER-STATEMENT OF MATERIAL FACTS[1]

1. Plaintiff admits.

2. Plaintiff admits.

3. Plaintiff admits.

4. Plaintiff did sustain injuries as a result of the collision. See Plaintiff's Mot. for Partial Summ. J., ECF No. 97, PageID.2857-87.

5. Plaintiff admits that Defendant negligently failed to yield and is at fault for causing the crash to occur.

6. Plaintiff admits that Plaintiff has asserted a separate and distinct direct negligence claim against FJ Carrier for negligently hiring, training, supervising, and monitoring Defendant Jimenez.

8. Plaintiff admits that one theory of liability Plaintiff has asserted against Defendant FJ Carrier is that Defendant is vicariously liable under respondeat superior and the owner liability act.

9. Plaintiff admits and agrees that the issue of Defendant Pastrana-Jimenez's employment at the time of the crash is not in dispute.

10. Plaintiff also agrees that FJ Carrier owned the vehicle and that Defendant Pastrana-Jimenez was operating the vehicle with FJ Carrier's consent.

[1] Defendant's Statement of Material Facts omits a seventh numbered paragraph. For the sake of matching Defendant's numbered paragraphs, Plaintiff likewise omits the same numbered paragraph.

11. Plaintiff agrees that FJ Carrier has admitted Defendant Pastrana-Jimenez was negligent and caused the crash. Plaintiff further states that Defendants did not plead comparative negligence in their Answer, rendering liability and comparative negligence waived.

12. Plaintiff again admits that Plaintiff has alleged separate and distinct negligence claims against FJ Carrier. One claim that Plaintiff has asserted is that FJ Carrier negligently hired, trained, and supervised Defendant Pastrana-Jimenez; another claim is that FJ Carrier negligently entrusted its vehicle to an unqualified and unfit driver.

13. Plaintiff denies. While employees of FJ Carrier have testified that they ran a "PSP" search and a query of the Federal Motor Carrier Safety Administration's drug and alcohol clearinghouse *before* they hired Defendant Pastrana-Jimenez, the evidence suggests otherwise.

Start with the PSP report. Defendant Pastrana-Jimenez applied for employment with FJ Carrier on August 1, 2023. Exhibit 1: Employment Application. Yet the PSP report that FJ Carrier's employees say was done before the crash was not executed until the afternoon of August 29, 2023, meaning that it was conducted not only *after* Defendant Pastrana-Jimenez was employed by FJ Carrier, it happened after the crash giving rise to this case itself. Exhibit 2: PSP Detailed Report.

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

Then turn to the query of the FMCSA Drug and Alcohol Clearinghouse. Like the PSP report, Defendants conducted a "pre-employment" inquiry on Mr. Pastrana-Jimenez in the hours that followed the crash giving rise to this case. Exhibit 3: FMCSA Drug & Alcohol Clearinghouse Report.

Therefore, Defendants' testimony regarding their pre-employment practices conflicts with the documentary evidence that shows FJ Carrier did not conduct a proper pre-employment inquiry pertaining to Defendant Pastrana-Jimenez prior to hiring him.

Additionally, Defendant Pastrana-Jimenez did not have any experience operating a commercial motor vehicle in the United States. *See* Beccerra Dep. 27:4-8. Defendant FJ Carrier Logistics did not provide any training to Defendant Pastrana-Jimenez. FJ Carrier Dep. 163:20-22. FJ Carrier failed to provide training regarding left turns and yielding the right of way. Grill Report 29.

14. While Elias Salinas testified that he was employed at FJ Carrier, he also testified that he spends ninety-five percent of his working hours at Tradex Logistics Incorporated, a separate logistics company. Exhibit 4: FJ Carrier Logistics LLC Dep. 33:13-19.

15. Plaintiff denies. Hazel Beccerra testified that she reviewed the PSP report prior to hiring Defendant Pastrana-Jimenez. Exhibit 5: Beccerra Dep. 26:19-27:3. However, as previously stated, the PSP report was not generated until after the

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

crash happened. Therefore, her testimony and the documentary evidence conflict as to whether Mr. Pastrana-Jimenez's driving record was reviewed prior to being hired by FJ Carrier. Moreover, Defendant Pastrana-Jimenez does not speak English, as required by 49 C.F.R. § 391.11(b)(2). Hazel Beccerra testified she does not speak English and the only way she communicated with Defendant was in Spanish. Beccerra Dep. 25:17-18. A driver must be able to read and speak English to be qualified to operate a commercial motor vehicle in the United States. *Id.* Defendant Pastrana-Jimenez was not.

16. Plaintiff denies. First, a PSP report alone does not show that a driver is in "good standing" to drive within the United States. Second, a PSP report does not indicate the absence of prior collisions or moving violations. *See* Exhibit 6: *PSP and MVR What's the Difference?*, Federal Motor Carrier Safety Administration (June 1, 2024). Instead, a PSP only shows data when a driver has driven in the United States, which Hazel Beccerra testified that he had never done prior to his employment with FJ Carrier. Beccerra Dep. 27:4-7. Additionally, Defendant completely ignores the fact that Defendant Pastrana-Jimenez was not qualified to operate a commercial motor vehicle because he could not read and speak the English language. 49 C.F.R. § 391.11. Moreover, Defendant FJ Carrier Logistics failed to properly train Defendant Pastrana-Jimenez and failed to properly monitor him. For example, Defendant FJ Carrier Logistics has a speeding policy where after 3 speeding

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

warnings, that driver is fired. *See* Beccerra Dep. 21:13-19. Defendant Pastrana-Jimenez had eleven alerts in the trip for this crash. Defendant Pastrana-Jimenez should have been warned and removed from driving if Defendant FJ Carrier Logistics was properly monitoring their drivers. Defendant FJ Carrier Logistics failed to monitor their drivers, which was a cause of the collision. Grill Report 35.

17. Plaintiff denies. Mr. Pastrana-Jimenez has not participated in discovery and has not been deposed. Defendants have not produced any documentation to show that he had never been involved in a prior collision or that he had never received a citation prior to the crash.

18. Plaintiff denies. While Mr. Pastrana-Jimenez may not have been involved in any prior "accidents" during his employment with FJ Carrier, he was driving while receiving numerous speeding alerts, which, had FJ Carrier complied with policies, would have resulted in him receiving several warnings and being terminated from his employment. Exhibit 9: Monarch Report. Defendant FJ Carrier Logistics failing to monitor Defendant Pastrana-Jimenez, and failing to warn and then subsequently terminate him, was a cause of the collision. Grill Report 35.

19. While Defendants have stated that a road test was performed, they have provided no evidence as to what the contents of the road test were, and how they decided whether Mr. Pastrana-Jimenez (or any other applicant for employment) received a satisfactory result to drive its vehicles.

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

## ADDITIONAL MATERIAL FACTS

1. Every motor carrier (and its officers, agents, representatives, and employees) operating in the United States is required to be instructed in and comply with the Federal Motor Carrier Safety Regulations. 49 C.F.R. § 392.1(a).

2. To operate a commercial motor vehicle in the United States, a driver must have the knowledge and skills necessary to operate a commercial motor vehicle as prescribed by the Federal Motor Carrier Safety Regulations. *Id.* § 383.110.

3. Similarly, a driver "shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle." *Id.* § 391.11(a). A motor carrier "shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle." *Id.*

4. A person is qualified to drive a commercial motor vehicle if, among other requirements, they can "read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records." *Id.* § 391.11(b)(2). Likewise, a person is qualified if they can "by reason of experience, training, or both, safely operate the type of commercial motor vehicle he/she drives. *Id.* § 391.11(b)(3).

5. Marco Polo Pastrana-Jimenez was not qualified to operate commercial motor vehicles under the Federal Motor Carrier Safety Regulations because he could

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

not speak English proficiently and did not have the requisite experience or training to safely operate the commercial vehicle he was operating. Indeed, at the scene of the crash, an interpreter was required to be called to the scene because Mr. Pastrana-Jimenez could not communicate with the responding police officers who spoke English. Exhibit 12: Police Investigation Report. Additionally, Defendant Pastrana-Jimenez did not have the proper training on how to operate a left turn and yielding the right of way. Grill Report 29.

6. Hazel Beccerra hired drivers at FJ Carrier. Beccerra Dep. 12:21-24. She was the person at FJ Carrier who hired Mr. Pastrana-Jimenez. *Id.* at 25:13-14. Despite being the person responsible for hiring drivers who operate in the United States, Ms. Beccerra does not speak English, *id.* at 25:17-18, and she did not know whether Mr. Pastrana-Jimenez spoke English. *Id.* at 25:15-16. Elias Salinas, the corporate representative for FJ Carrier likewise could not confirm if Mr. Pastrana-Jimenez spoke English. FJ Carrier Dep. 167:10-15.

7. In addition, FJ Carrier failed to ensure that Mr. Pastrana-Jimenez was qualified based on experience and training. As part of its own hiring practices, FJ Carrier would only hire an applicant with a minimum of two years of "verifiable tractor-trailer driving experience within the United States and/or Mexico in similar CMVs." Exhibit 7: FJ Carrier Safety Policy Manual 59. But FJ Carrier did not verify that Mr. Pastrana-Jimenez possessed those qualifications. Instead, it knew that he

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

had never driven in the United States before he applied to work there. *See* Beccerra Dep. 27:4-8. And there is no evidence to show that any investigation was undertaken regarding the types of vehicles he would have operated at his prior employment. *See* PSP Report (showing PSP report not run until date of crash).

8. Adam Grill, an expert regarding the standard of care of commercial vehicle operators and motor carriers, has stated that FJ Carrier failed to ensure proper compliance with the Federal Motor Carrier Safety Regulations pertaining to the hiring of qualified drivers, and this failure was a proximate cause of the collision. Exhibit 8: Grill Report.

9. FJ Carrier also was negligent in its training of Mr. Pastrana-Jimenez and its employees. For instance, no one at FJ Carrier taught Ms. Beccerra, who hired drivers, what a driver qualification file was. Beccerra Dep. 14:23-25. A driver qualification file is one of the most basic files for a truck driver. Additionally, when Mr. Pastrana-Jimenez was hired, the only training that he was provided related to his hours of service requirements. *See id.* at 26:8-13. FJ Carrier did not provide Mr. Pastrana-Jimenez with any training on how to safely operate a commercial motor vehicle. *Id.* at 26:14-17.

10. Instead, all that FJ Carrier would do prior to allowing a driver to operate its vehicles is an orientation that lasted less than a full day. FJ Carrier Dep. 163:20-22. The contents of the orientation centered around how to use the electronic

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

logbooks and who to contact in case of an emergency. *Id.* at 163:11-16. FJ Carrier's lack of actual training being conducted is a "deviation from the standards expected of a safe and reasonable carrier." Grill Report 27.

11. Furthermore, FJ Carrier was negligent in monitoring their drivers. FJ Carrier could monitor drivers in several ways. First, it could monitor drivers' hours of service and vehicle speed through Monarch, a telematics software. Beccerra Dep. 34:22-25. Second, FJ Carrier could monitor cameras located on all of its trucks. *Id.* at 17:10-15.

12. The hours of service logs for Mr. Pastrana-Jimenez and Omar Lima, his co-driver, for the days leading up to the crash only showed Mr. Lima as the driver of the vehicle. Exhibit 9: Monarch Report. Had FJ Carrier been properly monitoring its drivers, it would have identified that there was an hours of service violation with Mr. Lima being continuously logged in to Monarch as the only driver. Grill Report 18.

13. Similarly, FJ Carrier had the ability to track the speed of its vehicles and would receive alerts though Monarch when a driver would speed. Beccerra Dep. 18:10-13.

14. At the time of the crash, when a driver received a speeding alert, employees of FJ Carrier were to call the driver over the phone, check in on what was going on, and warn them to not continue speeding. *Id.* at 20:15-21:9. FJ Carrier

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

employees were required to give drivers warnings when they received a speeding alert through Monarch, *id.* at 21:10-12, and when a driver received three speeding warnings, they would be terminated from their employment. *Id.* at 21:13-19. Drivers could have been issued more than one warning on a given trip. *Id.* at 22:3-4. And if a driver received three warnings for speeding during one trip, they would have been terminated. *Id.* at 22:5-7.

15. FJ Carrier did not follow this policy with Mr. Pastrana-Jimenez or his co-driver, Mr. Lima. The Monarch data from their trip reveals at least eleven in-cab alerts that were issued for speeding. *See* Monarch Report; Grill Report 20-22. Despite Monarch issuing numerous alerts for speeding, Mr. Lima stated that no one from FJ Carrier called him to warn him for speeding during this trip. Exhibit 10: Lima Dep. 18:9-21.

16. Moreover, FJ Carrier failed to monitor its drivers through data maintained by the Federal Motor Carrier Safety Administration. The Safety Measurement System of the FMCSA compiles seven Behavior Analysis and Safety Improvement Categories (BASIC) scores. Grill Report 24. FJ Carrier has been in an alert status with four out of the seven BASIC scores. *Id.*

17. Despite this, no one was responsible for reviewing these scores at FJ Carrier. Its corporate representative stated that Marco Morales, another employee in the safety department, would have been responsible for those scores at the time of

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

the crash. FJ Carrier Dep. 40:5-23. But Mr. Morales stated that he never reviewed these scores for FJ Carrier. Exhibit 11: Morales Dep. 36:23-24. FJ Carrier's failure to improve these scores or to comply with its own policies regarding the safe and defensive operation of commercial motor vehicles contributed to the unsafe driving acts of Mr. Pastrana-Jimenez. Grill Report 25.

18. FJ Carrier's failures related to monitoring, training, and supervising its drivers were "inconsistent with industry standards and regulations." Grill Report 35. These failures "were a proximate cause of the collision." *Id.*

## INTRODUCTION

If FJ Carrier's motion sounds familiar, it should. The Court has already rejected FJ Carrier's argument that Plaintiff's direct negligence claims must be dismissed in light of its admission of vicarious liability, and the law of the case forecloses a second attempt. The argument also fails on the merits for the same reason it failed before: Michigan law allows a plaintiff to pursue direct negligence claims against an employer alongside vicarious liability.

FJ Carrier's alternative argument, that Plaintiff has no evidence of its negligence, fails on the record. FJ Carrier's witnesses testified that they screened Mr. Pastrana-Jimenez before hiring him, but his PSP report and Clearinghouse query were both run after the crash. FJ Carrier put a driver behind the wheel who had never driven in the United States and needed an interpreter to speak with responding

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

officers, and it ignored eleven speeding alerts on the trip that ended in this crash. The evidence shows that Defendant FJ Carrier Logistics was a cause of the collision. In addition, Adam Grill, Expert in the trucking industry, opines that Defendant FJ Carrier Logistics was a cause of the collision.

## STANDARD OF REVIEW

Courts evaluate a motion made under Rule 12(c) with the same standards used when considering a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017). The Court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Essentially, the Court is assessing "whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).

Next, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence permits a reasonable factfinder to return a verdict in favor of the nonmovant, and a fact is "material" if it may affect the outcome of the case. *See Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021). When considering a motion for summary judgment,

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

the Court must view the evidence, and any reasonable inferences drawn from that evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ARGUMENT

### I. Defendant's arguments are barred by the law-of-the-case doctrine because the Court has already rejected these same arguments

The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The doctrine aims to "maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit," and recognizes "that for cases to reach resolution, issues cannot be argued and reargued without end." *Edmonds v. Smith*, 922 F.3d 737, 739-40 (6th Cir. 2019).

"The decision of an issue need not be express to establish the law of the case." 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4478 (3d ed. April 2026 update). And while the law-of-the case doctrine is discretionary, *see In re Kenneth Allen Knight Trust*, 303 F.3d 671, 677 (6th Cir.

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

2002), a court's power to reach a result inconsistent with a prior decision reached in the same case is "to be exercised very sparingly, and only under extraordinary circumstances." *Id.* (citation omitted).

In this case, the law-of-the-case doctrine applies and precludes relitigating Defendant's Rule 12(c) arguments, which were previously raised and decided by this Court when it reached Defendant's conditional bifurcation request that rested on allowing the direct negligence claims to proceed. *See* ECF No. 80, PageID.2050. Defendant recognizes as much, *see* Mot. Summ. J. 5 n. 1, ECF No. 93, PageID.2218, yet contends that the Court should consider these arguments a second time because of FJ Carrier's admission of vicarious liability and "the underlying negligence" of its driver. *Id.* However, the facts that were true at the time of Defendant's first Rule 12(c) motion are the same now as they were then. Defendant did not admit liability for the first time in the time that has passed between then and now. It has admitted liability from the very beginning. *See* ECF No. 71, PageID.1763.

Thus, the law-of-the-case doctrine bars relitigating these issues which have already been decided by this Court.

## II. Michigan law expressly allows Plaintiff's direct negligence claims against FJ Carrier to proceed

Defendant alleges that Plaintiff's claims of direct negligence against FJ Carrier must be dismissed because they are duplicative given the admission of vicarious liability. But this argument ignores the fact that for sixty-five years,

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

Michigan has allowed for direct negligence claims to proceed in cases that also contain an admission of vicarious liability. *Elliott v. A. J. Smith Contracting, Co.*, 100 N.W.2d 257, 260 (Mich. 1960); *Perin v. Peuler*, 130 N.W.2d 4, 14 (Mich. 1964), *overruled on other grounds by McDougall v. Schanz*, 597 N.W.2d 148 (Mich. 1999).

While Defendant states that the Michigan Supreme Court has not addressed that issue, that is not true. The Michigan Supreme Court addressed this issue in *Elliott*. There, a five-year-old child was killed by a negligent driver as the child was crossing the street. *Elliott*, 100 N.W.2d at 259. A wrongful death suit was filed against the driver, and his employer, A.J. Smith Contracting Co. A jury decided in favor of the plaintiff at trial. On appeal, the defendant claimed that the trial court erred, *inter alia*, in giving jury instructions regarding both negligent entrustment and vicarious liability. *Id*. at 260.

The court held that there was no error in the jury instructions. *Id*. at 261. It concluded that **"plaintiff has 2 theories for defendant's liability: 1) defendant's alleged negligence in entrusting a motor vehicle to an employee unfit to be at the wheel, and 2) defendant's vicarious liability for the negligence of an employee acting within the scope of his employment. These are 2 perfectly valid theories."** *Id*. (Emphasis added).

*Elliott* was reaffirmed shortly thereafter in *Perin v. Peuler*, 130 N.W.2d 4 (Mich. 1964) *overruled on other grounds by McDougall v. Schanz*, 597 N.W.2d 148

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

(Mich. 1999). In *Perin*, the plaintiff was hit by a car operated by Henry Peuler Jr. *Id.* at 12. The car was owned by the driver's father, Henry Peuler Sr. The plaintiff sued the driver for negligence and sued the driver's father for ownership liability. *Id*. Plaintiff obtained the driver's driving record, which was marred by infractions, and moved to amend her complaint to add a claim of negligent entrustment against the vehicle's owner in addition to vicarious liability under the ownership liability statute. *Id*. The trial court denied the motion. *Id*.

On appeal, the Supreme Court held that the common law doctrine of negligent entrustment "stands unimpaired by Michigan's 55-year-old owner-liability statute." *Id*. at 6. The *Perin* court ruled plaintiff could pursue both theories simultaneously:

> Thus the plaintiff in negligence may rely upon the owner-liability statute to hold the owner responsive for negligent operation of the latter's motor vehicle by another, **and at the same time** rely upon the quoted rule to hold the owner responsive for personal negligence arising out of negligent entrustment of such motor vehicle; provided of course such statutorily imputed negligence and such personal negligence are causally connected with the plaintiff's injury. Such reasoning merely *pursues Elliott,* 100 N.W.2d at 260 . . . .

*Id.* at 8 (emphasis added).

Likewise, in a trucking case like this one, the Michigan Court of Appeals considered this exact same issue and squarely rejected the arguments advanced by Defendant:

> Defendants argue that a plaintiff should not be permitted to pursue a claim of negligent entrustment/supervision when vicarious liability is admitted and the claim of negligent entrustment/supervision cannot

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

> expand the scope or amount of an employer's liability. Defendants contend that plaintiff's only purpose for pursuing the additional claim was to introduce evidence of Michael Bindig's driving record, which was otherwise inadmissible. In *Perin v. Peuler (On Rehearing)*, N.W.2d 4 (1964), *overruled in part on other grounds by McDougall v. Schanz*, 461 Mich. 15 (1999), **<u>our Supreme Court concluded that it was proper for a plaintiff to allege both a claim based on the owner's liability statute and a claim of negligent entrustment.</u>** The rule of stare decisis requires us to follow the decisions of our Supreme Court. *Tenneco, Inc v. Amerisure Mut Ins Co,* 761 N.W.2d 846 (2008). Therefore, we find no error in the trial court's decision to grant plaintiff leave to amend the complaint to add a claim of negligent entrustment/supervision. *Perin*, 373 Mich. at 538.

*Modzelewski-Shekoski v. Bindig*, No. 314830, 2014 WL 4656639 at *1 (Mich. Ct. App. Sept. 18, 2014) (emphasis added) (Exhibit 13).

This Court "should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999). Here, there is no evidence to suggest otherwise; in fact, the Michigan Supreme Court declined to review *Modzelewski-Shekoski*. 864 N.W.2d 558 (Mich. 2015) (mem.). Therefore, this precedent should be considered particularly persuasive. *See Lukas v. McPeak,* 730 F.3d 635, 638 (6th Cir. 2013).

These arguments are nothing new. **Plaintiff's Counsel has had many trucking cases with Defense Counsel. Defense Counsel files this exact motion in every case with Plaintiff's Counsel. This same motion that Defense Counsel has**

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

**filed has been denied every single time. Attached are five (5) orders denying this same motion.** *See* Exhibit 14: Orders Denying Identical Motions.

The cases cited by Defendant do not change this conclusion. Defendant first cites to *Smith v. E.R. Squibb & Sons, Inc.*, 273 N.W.2d 476 (Mich. 1979), for the proposition that "if an action includes more than one theory of liability that is . . . duplicative of another theory, the jury is to be instructed on only one of the theories . . . ." ECF No. 93, PageID.2222. *Smith* does not pronounce such a broad rule. Instead, the court stated that its opinion "was limited solely to its facts." *Id.* at 480. And the court recognized that on different facts, it could be prejudicial error to not give jury instructions on both theories. *Id.*

Next, Defendant relies upon yet another products liability case, *Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176 (Mich. 1984), to support its argument that these claims are "duplicative." However, like *Smith*, the court in *Prentis* likewise stated that its opinion was "limited solely to its facts." *Id.* at 186. The court also recognized that negligence theories "generally focus[] on the defendant's conduct, requiring a showing that it was unreasonable . . ." *Id.* at 692.

So, while Defendant attempts to suggest that *Smith* and *Prentis* evidence a doctrine of the Michigan Supreme Court supporting its arguments, they do not. *Smith* and *Prentis* dealt with error relating to jury instructions. They did not address the substantive question of whether evidence could be presented at trial. And on the

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

instruction question itself, *Elliott* held that instructing on both negligent entrustment and vicarious liability was proper. 100 N.W.2d at 261.

Moreover, *Smith* and *Prentis* are inapposite because the court held the jury instructions were duplicative because the elements between negligence and a breach of warranty claim are identical. Here, though, Plaintiff's negligence claims against FJ Carrier are different, which FJ Carrier itself acknowledges. *See* ECF No. 93, PageID.2228 (stating that Plaintiff would need to provide "additional proofs" to establish direct negligence claims). Theories that require additional elements are not duplicative under *Smith* and *Prentis*.

The other cases cited by Defendant fare no better. While Defendant cites two cases to support the proposition that a plaintiff does not recover more than a single recovery for a single injury, its argument again overstates how Michigan law addresses these claims. True, Plaintiff's direct negligence claims do not multiply the damages he will recover at trial, but the cases cited by Defendant suggest nothing more. *See, e.g.*, *Kaiser v. Allen*, 746 N.W.2d 92, 96 (Mich. 2008). Rather, the way these issues were resolved was not by dismissing claims, but rather by applying the common law setoff rule after a verdict was reached. *See id.* at 96.

Furthermore, even the caselaw cited by Defendant recognizes that Plaintiff can present direct negligence claims against an employer. *See, e.g.*, *Cox v. Bd. of Hosp. Managers for City of Flint*, 651 N.W.2d 356, 361 (Mich. 2002). In *Cox*, which

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

was a medical malpractice case, the court stated that an employer could be "directly liable" for claims of negligence in supervising, retaining, and selecting staff in addition to being vicariously liable. *Id.*

FJ Carrier's remaining contention is that the direct negligence claims serve no purpose because they cannot increase its liability, and that Plaintiff pursues them only to place evidence of FJ Carrier's hiring and supervision failures before the jury. *Modzelewski-Shekoski* rejected both contentions. The defendants there argued that the direct claim "cannot expand the scope or amount of an employer's liability" and that the plaintiff's "only purpose" in pursuing it was to introduce evidence that would otherwise be inadmissible, and the Court of Appeals held that *Perin* forecloses that argument. 2014 WL 4656639, at *1. Nor does anything in Rule 12(c) or Rule 56 authorize judgment on a claim that is adequately pleaded and supported by evidence merely because the defendant considers it unnecessary. Redundancy is not the absence of an element. And to the extent FJ Carrier fears prejudice, this Court has already held that a limiting instruction addresses that concern. ECF No. 80, PageID.2051.

In all, Defendant has no Michigan authority to support its position that Michigan law only permits Plaintiff to proceed on one theory of liability. FJ Carrier's survey of other jurisdictions is beside the point. It should be noted that Defendant claims *McHaffie* is the majority rule, but that is not true. Defendant cites to 13 states

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

that support *McHaffie*. That is not the majority. The rule in Michigan, that direct negligence claims are separate and distinct claims, is the majority rule. A federal court predicts state law only where the state's highest court has not spoken, and on this question the Michigan Supreme Court has. Michigan law allows for these claims to be presented at trial, regardless of whether Defendant admits liability or not.

## III. Because Plaintiff has sufficient evidence to create a genuine issue of material fact regarding Plaintiff's direct negligence claims against FJ Carrier, summary judgment is not warranted

Plaintiff has sufficient evidence to create a genuine issue of material fact regarding Plaintiff's negligent entrustment claim. The common law tort of negligent entrustment "imposes liability on one who supplies a chattel for the use of another whom the supplier knows or has reason to know is, because of youth, inexperience, or otherwise, likely to use it in a manner involving unreasonable risk of physical harm." *Bennett v. Russell*, 913 N.W.2d 364 (Mich. Ct. App. 2018) (citation omitted).

The record shows both that Mr. Pastrana-Jimenez was unfit to drive a commercial motor vehicle in the United States and that FJ Carrier knew or had reason to know it. Federal law disqualifies a driver who cannot "read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, [and] to respond to official inquiries." 49 C.F.R. § 391.11(b)(2). Mr. Pastrana-Jimenez could not. At the scene, responding officers had to call an interpreter to speak with him. Add'l Facts ¶ 5. FJ

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

Carrier had every reason to know this. It hired him through an employee who does not speak English, took his application in Spanish only, and never verified whether he could speak English at all. *Id.* ¶ 6. It likewise knew he had never driven in the United States and never verified the two years of experience its own policy required. *Id.* ¶ 7. Therefore, it had "reason to know" he was likely to operate its tractor-trailer in a manner involving unreasonable risk of harm.

Plaintiff's trucking expert, Adam Grill, who has over fifteen years of experience as a truck driver, truck-driving consultant, and accident investigator, authored a thirty-five page report detailing how FJ Carrier's failures in hiring, training, supervising, and monitoring caused this crash. He has opined that FJ Carrier's failures during the hiring of Mr. Pastrana-Jimenez were a proximate cause of this collision. *Id.* ¶ 8.

Additionally, FJ Carrier did not exercise reasonable care to ensure that the drivers it employed were qualified under the Federal Motor Carrier Safety Regulations. Exhibit 15: Grill Supp. Report 4. Specifically, Mr. Grill stated that FJ Carrier failed to comply with 49 C.F.R. §391.11(b)(2), which requires drivers to demonstrate sufficient English-language proficiency to communicate with the public, by hiring Mr. Jimenez, despite him not being proficient in the English language, as documented by the need for him to have an interpreter when police responded to the crash. *Id.* FJ Carrier's decision to place Mr. Pastrana-Jimenez, who

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

was an unqualified driver, on the road "was a direct and proximate cause of the collision." *Id.*

Similarly, FJ Carrier was negligent in how it trained Mr. Pastrana-Jimenez. For motor carriers to have a successful training program, they must (1) educate drivers on a subject; (2) show drivers what the company's expectations are through hands-on experience; and (3) assess or test drivers to ensure that they meet, and believe in, the standards set forth by the motor carrier. Exhibit 8: Grill Report 16. To that end, FJ Carrier was required to have a program in place to effectively train their drivers. *Id.* at 15. They did not. Despite left-hand turns and failing to yield the right-of-way being known safety hazards for motor carriers, FJ Carrier provided no training whatsoever on not only those topics, but the operation of a commercial motor vehicle in general. *See* Beccerra Dep. 26:14-17. Instead, it conducted an "orientation" that lasted less than one day. *See* FJ Carrier Dep. 163:20-22. These actions by FJ Carrier do not provide any "positive indication" of actual training being conducted by FJ Carrier, which is a deviation from the standards expected of a "safe and reasonable carrier." Grill Report 27. The Safety Management Cycle, developed by the FMCSA, allows for motor carriers to identify areas of deficiency. *Id.* at 28. One of those steps is training and communication. *Id.* at 29. Plaintiff's expert has opined that there was a notable breakdown in the training and communication step relating to left turns and yielding the right of way. *Id.* FJ

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

Carrier's failure to properly train its employees was also a proximate cause of this collision. *Id.* at 35.

Next, Plaintiff has evidence creating a genuine issue of material fact regarding whether FJ Carrier was negligent in hiring, supervising, and monitoring Mr. Pastrana-Jimenez. "[T]he gravamen of negligent hiring or retention is that the employer bears some responsibility for bringing an employee into contact with a member of the public despite knowledge that doing so was likely to end poorly." *Mueller v. Brannigan Bros. Rests. & Taverns LLC*, 918 N.W.2d 545 (Mich. Ct. App. 2018).[2] FJ Carrier knew or should have known of prior, wrongful conduct on the part of Mr. Pastrana-Jimenez because it had the ability to monitor his speed and driving activities but did nothing while he received eleven speeding alerts during the same trip as the crash. *See* Monarch Report. This inaction comes despite FJ Carrier requiring its safety department to issue warnings every time a speeding alert was received, and to terminate employees who receive three warnings for speed. Beccerra Dep. 22:5-7. The failure of FJ Carrier to act in accordance with its own progressive disciplinary policy was a cause of the crash. Grill Report 35. Likewise,

---

[2] *Mueller* and the standard for negligent hiring relied upon by Defendants is likewise inapplicable to this case. *Mueller* decided the standard for a negligent hiring claim in the context of criminal conduct on the part of an employee. *See* 918 N.W.2d at 575. Here, this case does not involve criminal wrongdoing, so the requirement for Plaintiff to show "particularized forewarning" of misconduct is not applicable here. *See id.*

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

FJ Carrier did not use the monitoring systems that it had in place. If it had, it would have recognized that there should have been an hours-of-service violation because only Mr. Pastrana-Jimenez's co-driver was logged in as the driver on the telematics system. *Id.* at 18. The failure of FJ Carrier to adequately monitor its driver was likewise a cause of this crash. *Id.* at 35.

Also, FJ Carrier gave Mr. Pastrana-Jimenez no training on operating a commercial motor vehicle. Its only orientation lasted less than a day and covered electronic logs and emergency contacts. Add'l Facts ¶¶ 9–10. Plaintiff's expert opines that this falls below the standard of a reasonable carrier and was a proximate cause of the collision. *Id.* ¶¶ 10, 18. Instead, FJ Carrier should have implemented an effective safety management system to prevent unsafe driving acts; its failure to do so caused this crash to occur. Grill Report 25, 35.

**CONCLUSION**

Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment (ECF No. 93) in its entirety.

Respectfully submitted,

MICHIGAN AUTO LAW, P.C.

BY: /s/ Leo J. St. Amour
KEVIN H. SEIFERHELD (P58016)
ALEXANDER P. KEMP (P80963)
LEO J. ST. AMOUR (P88642)
Attorneys for Plaintiff

Dated: October 8, 2026

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills, MI 48334 (248) 353-7575

## CERTIFICATE OF SERVICE

I hereby certify that Plaintiff's Response to Defendant FJ Carrier Logistics LLC's Motion for Partial Summary Judgment and/or Dismissal of Certain Claims under Rule 12(c) (ECF No. 93) was filed with the Clerk of Court using the CM/ECF electronic filing system, which sent a Notice of Electronic Filing and a copy of the foregoing instrument to all counsel of record.

/s/ Leo St. Amour
Leo St. Amour