Exhibit 15

Atlantic Pacific Resource Group, Inc.
1236 Cordova Street
Billings, Montana 59101
406-248-2766

October 8, 2026

Mr. Alexander P. Kemp, Esq.
Michigan Auto Law, P.C.
30101 Northwestern Hwy.
Farmington Hills, MI 48334

Re: James McDonald vs FJ Carrier Logistics, LLC et al.,

Dear Mr. Kemp:

In connection with this matter, I previously submitted a report on September 2, 2026.

This supplemental report is based on all information supporting the opinions of September 2, 2026, and information reviewed since, which specifically includes the following:

- Body Worn Camera Video identified as Maxe Aaron_20230829_0829;
- Body Worn Camera Video identified as 23-15733_Redacted;
- Brownstown Police Department Incident Report authored by Officer Mott.

These videos have not changed any opinions I have already offered on this matter.

The standards of care of commercial motor vehicle operators noted within my original report have not changed. It is my overarching opinion that Mr. Marco Polo Pastrana-Jimenez, did not follow the standard of care that is necessary for drivers of commercial motor vehicles. FJ Carrier Logistics, LLC did not ensure their commercial motor vehicle operators were properly vetted, trained, operated safely, operated within the FMCSRs, and/or followed established proper safe operating procedures as noted in my original report.

# I. OPINIONS REGARDING FJ CARRIER'S COMPLIANCE WITH FMSCR §391.11.

1. FMCSR § 391.11 General Qualification of drivers.

   a. "*A person shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle. Except at provided in § 391.63, a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle.*

   b. *Except as provided in subpart G of this part, a person is qualified to driver a motor vehicle if he/she –*

      *(1) Is at least 21 years old;*

      *(2) Can read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records;*

      *(3) Can, by reason of experience, training, or both, safely operate the type of commercial motor vehicle he/she drives;*

      *(4) Is physically qualified to drive a commercial motor vehicle in accordance with subpart E – Physical Qualifications and Examinations of this part;*

      *(5) Has a currently valid commercial motor vehicle operator's license issued only by one State or Jurisdiction;*

      *(6) Is not disqualified to drive a commercial motor vehicle under the rules in §391.15; and*

      *(7) Has successfully completed a driver's road test and has been issued a certificate of driver's road test in accordance with §391.31 or has presented an operator's license or a certificate of road test which the motor carrier that employs him/her has accepted as equivalent to a road test in accordance with §391.33.*"

2. Deposition testimony of Hazel Beccerra:

    a. Page 25: "***Q:*** *Did you hire Marco Polo Pastrana-Jimenez?* ***A:*** *Yes.* ***Q:*** *Does he speak English?* ***A:*** *I don't know.* ***Q:*** *Do you speak English?* ***A:*** *No.* ***Q:*** *You were not able to speak with him in English; true?* ***A:*** *True.* ***Q:*** *Can Mr. Pastrana read English?* ***A:*** *I don't know.*"

    b. Page 40: "***Q:*** *Omar Lima was the co-driver at the time of our collision. Does he still work there?* ***A:*** *Yes.*"

    c. Pages 48-49: "***Q:*** *Is there any requirement for drivers to be able to read and speak English?* ***A:*** *Now there is.* ***Q:*** *And when you say now there is, what do you mean by that?* ***A:*** *That right now we do run a protocol with English.* ***Q:*** *Is that a new protocol?* ***A:*** *Yes.* ***Q:*** *When did that start?* ***A:*** *I don't remember.* ***Q:*** *Was it after this collision?* ***A:*** *Yes.*"

    d. Pages 50-51: "***Q:*** *Would you agree that a driver must be able to read and speak the English language sufficiently to understand traffic signs and signals in the English language?* ***A:*** *Yes, of course. I mentioned it in a previous answer.* ***Q:*** *Would you agree that drivers are required to read and speak the English language sufficiently to respond to official inquiries?* ***A:*** *Regarding their work, yes.* ***Q:*** *Would you agree that drivers are required to read and speak the English language sufficiently to make entries on reports and records?* ***A:*** *What do you mean by that last part?* ***Q:*** *Do you know if a driver, to be able to operate a commercial motor vehicle, is required to be able to read and speak the English language sufficiently to make entries on reports and records?* ***A:*** *Yes, if it's regarding their work, of course they're required.*"

3. Deposition testimony of Omar Lima:

    a. Page 7: "***Q:*** *Do you speak English?* ***A:*** *No.* ***Q:*** *Do you read English?* ***A:*** *No.*"

    b. Page 45: "***Q:*** *Did you then drive the truck back to Nuevo Laredo?* ***A:*** *Yes.* ***Q:*** *Was Mr. Pastrana also doing some of that driving back to FJ?* ***A:*** *No.* ***Q:*** *Was he ever instructed not to do any of the driving on the way back?* ***A:*** *Yes.*"

4.

| | | |
|---|---|---|
| Brownstown District<br>08/29/2023 08:08:07 gmilatz8<br>AVAILABLE | Narrative Added | USCBP REQUESTED FOR SPANISH LANGUAGE, STATE NO ONE |

5.

**INVESTIGATION:**
Officer's Maxe and Klaft were the first Officers dispatched to the crash. Upon their arrival they spoke with witnesses and attempted to speak with the driver of Unit 1, but due to a language barrier were unable to do so. After it was determined the injuries to the driver of Unit 2 were severe and possibly life

6.

**INTERVIEW WITH DRIVER ONE:**
Officer Villarreal of the Woodhaven Police Department was requested to make the scene to assist in translation during the interview of Jimenez. Jimenez stated he was traveling west on Pennsylvania Rd

7. **OPINION:** As evidenced by the body worn cameras of law enforcement interviewing the defendant, it is clear that Mr. Pastrana-Jimenez was unable to speak English at a level where he could respond to official inquiries. The Brownstown Police Department Summary generated by Officer Mott – Badge #15, indicates they requested Officer Villarreal, a Spanish/English translator to respond to the scene in order to answer the law officer's questions.

8. **OPINION:** FJ Carrier Logistics did not exercise reasonable care to ensure that the drivers it employed complied with 49 C.F.R. §391.11(b)(2), which requires drivers to demonstrate sufficient English-language proficiency to communicate with the public.

9. **OPINION:** FJ Carrier Logistics' decision to place an unqualified driver in operation on a public roadway was a direct and proximate cause of the collision.

10. **OPINION:** Post-collision, FJ Carrier Logistics continued to violate applicable federal regulations by permitting the co-driver, Omar Lima, who was not qualified due to limited English-language proficiency, to operate the commercial motor vehicle from Michigan to Nuevo Laredo, Mexico.

***These are my opinions based on information that I have reviewed to date. I reserve the right to supplement my opinions, as new and additional information is made available to me.***

I, ADAM GRILL, CERTIFY THAT THESE ARE MY OPINIONS ON THIS 8TH DAY OF OCTOBER 2026 REGARDING THE CASE OF JAMES McDONALD VS FJ CARRIER LOGISTICS, LLC, ET AL.

ADAM GRILL